OPINION
{¶ 1} Defendant-appellant, Davis Smith, appeals his conviction and sentence for theft by deception following a bench trial in the Butler County Court of Common Pleas.
 {¶ 2} In May 2003, appellant was indicted on one count of theft by deception and one count of grand theft by deception in connection with two contracts he entered into with homeowners to build garages on their property. Specifically, the state alleged that in the spring and summer of 2001, appellant entered into a contract with Sandra Green to build her a garage for $8,000 and into a contract with Terry Taylor to build him a garage for $17,700, and that after receiving $4,000 from Green and $13,000 from Taylor, appellant started but did not finish the garages, leaving Green with only concrete piers and Taylor with only four unfinished walls. Following a bench trial on September 13, 2004, the trial court found appellant guilty as charged with regard to Green. The trial court, however, found appellant guilty of theft by deception with regard to Taylor (a fifth-degree felony), not grand theft by deception (a fourth-degree felony) as originally charged. The trial court found that upon reviewing "the value of the services provided versus the money provided, * * * there [was] no evidence * * * the theft was over $5,000." Appellant was sentenced accordingly and ordered to pay restitution in the amount of $4,000 to Green and $20,300 to Taylor. This appeal follows.
 {¶ 3} Assignment of Error No. 1:
 {¶ 4} "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANTA-PPELLANT'S CONVICTIONS."
 {¶ 5} Sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. State v. Martin
(May 4, 1998), Warren App. No. CA97-070-72, at 5. When reviewing a claim of insufficient evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Upon appellate review, the reviewing court may not substitute its judgment for the trier of fact on issues related to the credibility of witness testimony. See State v. Farwell,
Clermont App. No. CA2001-03-041, 2002-Ohio-1912.
 {¶ 6} Appellant argues there was insufficient evidence to support his conviction for theft by deception under R.C.2913.02(A)(3) because there was insufficient evidence of his intent to not perform the work at the time he entered into the contracts with Green and Taylor. R.C. 2913.02(A)(3) states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 7} The term "deprive" in the statute means to do any of the following: withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration; dispose of property so as to make it unlikely that the owner will recover it; accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration. R.C. 2913.01(C)(1)-(3).
 {¶ 8} A person acts "purposely" when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A). The term "knowingly," as used in the requirement of "knowingly obtain or exert control," means that a person, regardless of purpose, is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B).
 {¶ 9} Contrary to appellant's assertion, to prove a violation of R.C. 2913.02(A)(3), the state need not prove the defendant had no intent to perform the work at the time he entered into a contract. Rather, the state must demonstrate that at the time the defendant took the money, he had no intent to repay the money or perform under the contracts in exchange. State v. Bakies
(1991), 71 Ohio App.3d 810, 813; State v. Coleman, Champaign App. No. 2002 CA 17, 2003-Ohio-5724, ¶ 29.
 {¶ 10} Testimony at trial showed that appellant entered into a contract with Green on May 3, 2001 to build her a garage for $8,000. That same day, Green gave $2,000 to appellant. One month later, appellant applied for a building permit. After the permit was issued on June 26, appellant came to Green's property, dug holes and poured concrete, and asked for an additional $2,000. Green gave him the money on July 2. Before moving to Florida in November 2001, appellant did not come back to finish Green's garage, allegedly because appellant was working on Taylor's garage and Green told appellant he could take his time. The piers built by appellant were subsequently "red-tagged" by the Butler County Building Inspector because they had not been approved before the concrete was poured.
 {¶ 11} In spring 2002, Green received a call from appellant's wife asking Green to pay appellant's travel expenses from Florida so that he could come back to Ohio and finish the garage. Green refused to pay. Appellant never finished the garage, allegedly because Green did not want him to come back to her property. For $4,000, Green was left with a few concrete piers and piles of dirt, and no garage. Appellant testified that for $4,000, he made a garden for Green, dug out holes, poured the piers, and cleaned up the area.
 {¶ 12} Appellant entered into a contract with Taylor on June 14, 2001 to build a garage for $17,700. Between June 14 and August 8, Taylor paid $13,000 to appellant. Taylor also paid $1,226.65 to two suppliers for building supplies appellant had not paid for. According to Taylor, appellant would not show up for days or weeks, but then would come and perform some work upon being contacted by Taylor. In August, the building inspector stopped work on the garage because the workmanship did not meet county standards. The problem was subsequently remedied. By November, Taylor still did not have a garage; he had a concrete floor, four walls, three windows, and siding on one-half to two-thirds of the walls. The building did not have a roof or garage doors.
 {¶ 13} Concerned that the trusses being built by appellant were not built properly, Taylor contacted the building inspector in November. The inspector red-tagged all of the trusses because they did not meet the building code. Appellant then confronted Taylor about contacting the building inspector regarding the trusses. Appellant subsequently left Taylor's property and never came back before moving to Florida. Although it would have taken only a week and one-half to finish the garage, appellant could not explain why he did not finish the garage before moving to Florida. Thereafter, the building sat in limbo throughout the winter.
 {¶ 14} In early 2002, Taylor received a call from appellant or his wife asking him to pay $1,000 so that appellant could come back from Florida and finish the garage. Taylor refused to pay. He then sent a letter to appellant giving him 30 days to pick up the equipment appellant had left on Taylor's property before moving to Florida. Appellant failed to pick up his equipment and Taylor sold it for $500. Then, on April 29, 2002, Taylor's attorney sent a letter to appellant terminating the contract. Taylor hired someone else to finish the garage, which entailed rebuilding the garage frame.
 {¶ 15} Appellant testified he told Taylor he would come back in the spring to finish Taylor's garage, and that he worked on the building to make it more sturdy before he moved to Florida. Appellant testified he intentionally left his equipment on Taylor's property because he knew he was coming back in the spring. According to appellant, the equipment left behind, which included a Bobcat backhoe attachment he had not paid off yet, was worth $5,580. Appellant had taken the Bobcat with him to Florida. Appellant admitted asking Green and Taylor for an extra amount of money to come back to finish their garages upon the advice of his attorney. Appellant testified he wanted to come back to finish both garages in the spring but was prevented from doing so by Green and Taylor.
 {¶ 16} Construing the evidence most favorably for the state, we find there was sufficient evidence for the trial court to find that appellant committed a theft by deception when he failed to build a garage for Green after receiving half of the agreed price under the contract and leaving her with concrete piers and dirt for $4,000.
 {¶ 17} Construing the evidence most favorably for the state, we also find there was sufficient evidence for the trial court to find that appellant committed a theft by deception when he received $13,000 from Taylor and left him with only four walls, three windows, incomplete siding, and no roof or garage doors. Citing Coleman, Champaign App. No. 2002 CA 17, 2003-Ohio-5724, appellant argues that his intent to deceive was negated by the fact he performed a significant amount of construction on the garage and was prevented from finishing it by Taylor. InColeman, the appellate court found that the intent of theft by deception was negated by Coleman's actions of doing a significant amount of work on a roofing job and obtaining materials to complete the job.
 {¶ 18} However, we find appellant's argument unpersuasive because the amount of work appellant did complete was insufficient to negate a finding he acted with purpose or intent to deprive Taylor of his property. During construction, the building was red-tagged at least twice by the building inspector. In addition, by appellant's own admission, although he could have finished the garage in a week and one-half before moving to Florida, he did not do so. Instead, he left the unfinished garage open and subject to the winter conditions. Then, appellant asked for $1,000 to come back and finish the garage. Criminal intent is determined from the surrounding facts and circumstances. Statev. Garner, 74 Ohio St.3d 49, 60, 1995-Ohio-168. We are not persuaded that appellant's conduct of building part of the garage for Taylor prohibited the trial court from finding that appellant possessed the necessary intent to commit theft. Appellant's first assignment of error is accordingly overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTA-PPELLANT WHEN IT ORDERED RESTITUTION TO MR. TAYLOR IN THE AMOUNT OF $20,300.00."
 {¶ 21} R.C. 2929.18(A)(1) authorizes a trial court to order restitution to the victim of the offender's crime in an amount based on the victim's economic loss. R.C. 2929.01(M) defines "economic loss" in part as "any economic detriment suffered by a victim as a result of the commission of a felony." The record must contain sufficient evidence for the court to ascertain the amount of restitution to a reasonable degree of certainty. Statev. Williams, Butler App. No. CA2002-09-214, 2003-Ohio-4453, ¶ 31. The amount of restitution must bear a reasonable relationship to the loss suffered. Id. Restitution is limited to the actual loss caused by the offender's criminal conduct for which he was convicted. State v. Swart (Oct. 23, 2000), Clinton App. No. CA2000-02-006, at 10.
 {¶ 22} Appellant argues that the trial court erred by ordering him to pay $20,300 in restitution to Taylor because it improperly includes the $7,000 Taylor allegedly paid someone to finish the garage. We agree.
 {¶ 23} It is undisputed that Taylor paid $13,000 to appellant. Testimony at trial (and evidence in the form of two checks) showed that Taylor paid $1,226.65 to two suppliers for building supplies appellant had not paid. At trial, Taylor also testified he paid someone else to rebuild the frame and finish the garage. According to Taylor at the sentencing hearing, this cost him $7,000. In light of R.C. 2929.01(M) and Swart, we find that the trial court erred by ordering appellant to pay the $7,000 as part of the restitution. Because Taylor now has a garage, it cannot be said that he suffered an economic detriment when he paid $7,000 to someone other than appellant to finish the garage.[1]
 {¶ 24} Appellant also argues that the restitution order is erroneous and inconsistent with his fifth-degree felony theft conviction. We agree.
 {¶ 25} It is well-established that restitution can be ordered only for those acts that constitute the crime for which the defendant was convicted and sentenced. State v. Hafer,144 Ohio App.3d 345, 348, 2001-Ohio-2412. Although appellant was originally charged with a fourth-degree felony theft offense with regard to Taylor, he was convicted and sentenced by the trial court for a fifth-degree felony theft offense, which assumes a property value between $500 and less than $5,000. See R.C.2913.02(B)(2). Indeed, upon reviewing the value of the services provided and the money paid to appellant, the trial court specifically found that while a theft offense occurred, it could not determine that the amount of the theft exceeded $5,000.
 {¶ 26} The state calls our attention to our decision inState v. Brumett, Butler App. No. CA2003-05-135,2004-Ohio-2211, in which we upheld a restitution order in the amount of $100,000 even though the defendant had pled guilty to a fourth-degree felony theft offense, which assumes a property value of less than $100,000. However, the specific issue raised here by appellant was neither raised nor addressed in Brumett,
and may have been simply overlooked. We therefore find thatBrumett does not apply to the case at bar. We further find that the trial court erred by ordering appellant to pay more than $5,000 in restitution to Taylor when he was convicted of a fifth-degree felony theft offense. See State v. Clifton (1989),65 Ohio App.3d 117; State v. Rivera, Cuyahoga App. No. 84379,2004-Ohio-6648.
 {¶ 27} Accordingly, appellant's second assignment is sustained. We reverse the restitution order for Taylor and remand the matter to the trial court for a hearing and redetermination of the amount of restitution. The trial court should consider Taylor's payment of $13,000 to appellant, Taylor's payment of $1,226.65 to two suppliers, materials purchased and used by appellant, the cost of labor, Taylor's sale of appellant's equipment for $500 and the fact that Taylor kept the money, and Taylor's unsupported allegation he paid $7,000 to someone to finish the garage. In accordance with our analysis under this assignment of error, the recalculated amount of restitution for Taylor cannot exceed $5,000.
 {¶ 28} Judgment affirmed in part, reversed in part, and remanded.
Powell, P.J., and Bressler, J., concur.
[1] We note that unlike the building supplies paid by Taylor which were evidenced in the form of two checks, there was no evidence in the record to support Taylor's claim he paid someone $7,000 to finish the garage. See State v. Borders, Clermont App. No. CA2004-12-101, 2005-Ohio-4339.