OPINION
{¶ 1} Defendant-appellant, Julia A. Wilson, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. Because her conviction was supported by sufficient evidence, we affirm that judgment.
 {¶ 2} On August 5, 2004, a Franklin County grand jury indicted appellant on three counts of forgery in violation of R.C. 2913.31 and one count of theft in violation of R.C. 2913.02. The charges arose out of appellant's employment as the office manager for Commercial Industrial Maintenance Company ("CI"), a company owned by Charles and Anthony Dunnagan. As office manager, appellant's duties included handling the company's account payables and receivables and maintaining the company's checkbook.
 {¶ 3} In September 2001, the Dunnagans confronted appellant about some accounting irregularities they had recently discovered. Unable to explain the irregularities, appellant quit and left the office. Eventually, the Dunnagans discovered that appellant had on various occasions transferred money between her home equity account and the company's bank account, without their knowledge or consent.
 {¶ 4} The company's financial records were a "mess" and the company never recovered many missing documents. Nevertheless, there were financial records indicating that in some instances, appellant transferred money into the company's account from her home equity account, and on other occasions she transferred money or wrote checks from the company's account to her home equity account. Appellant claimed she transferred money from her personal account to the company's account because she was concerned about the company's financial condition and she did not want to lose her job if the company went out of business. Appellant claimed that she was paying herself back by transferring money or writing checks from the company's account to her personal account.
 {¶ 5} Company records indicate that appellant wrote four checks from the company's account made payable to her personal Key Bank home equity account. Although one of the Dunnagans signed the checks, the company had an existing credit card account with Key Bank, so the Dunnagans were unaware the checks were payable to appellant's personal account. On five occasions, appellant transferred money from the company's account to her personal home equity account without the Dunnagans' knowledge or approval. Appellant transferred funds or wrote checks totaling nearly $13,000 from the company's account to her home equity account. However, the company's financial records indicate that appellant transferred significantly more money from her personal account into the company's account than she transferred money or wrote checks from the company's account to her personal account.
 {¶ 6} Appellant entered a not guilty plea to the charges and proceeded to a bench trial. Prior to trial, the State dismissed two of the forgery counts. Therefore, the case proceeded on one count of forgery and one count of theft. The trial court found appellant not guilty of forgery but guilty of theft. The trial court sentenced appellant to two years of community control, 100 hours of community service, and imposed a $2,500 fine.
 {¶ 7} Appellant appeals and assigns the following error:
THE TRIAL COURT COMMITTED HARMFUL ERROR IN FINDING THE DEFENDANT-APPELLANT GUILTY OF THEFT AS THE CONVICTION OF THE DEFENDANT-APPELLANT IS NOT SUPPORTED BY CREDIBLE EVIDENCE SUFFICIENT TO ESTABLISH THAT THE DEFENDANT-APPELLANT TOOK THE PROPERTY OF ANOTHER WITH THE CRIMINAL INTENT NECESSARY TO COMMIT THE ALLEGED OFFENSE.
 {¶ 8} Appellant's assignment of error contests the sufficiency of the evidence supporting her theft conviction. InState v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
Id., at paragraph two of the syllabus.
 {¶ 9} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v.Thomas (1982), 70 Ohio St.2d 79, 80. This court does not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support the conviction. State v. Worrell, Franklin App. No. 04AP-410,2005-Ohio-1521, at ¶ 41.
 {¶ 10} The trial court convicted appellant of theft, in violation of R.C. 2913.02. In order to convict appellant of theft, the State had to present sufficient evidence to prove that appellant, with purpose to deprive the owner of property, knowingly obtained or exerted control over the property without the owner's consent or by deception. Appellant first contends that the evidence presented is legally insufficient to find her guilty of theft because CI was not the owner of the funds she removed from the company's account. We disagree.
 {¶ 11} For purposes of R.C. Chapter 2913, an "owner" is defined as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license, or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C.2913.01(D). Once appellant deposited money into CI's account, CI took possession and control of those funds and CI became the owner of that property for purposes of R.C. 2913.02. State v.Rhodes (1982), 2 Ohio St.3d 74, 76 (finding it necessary, in theft conviction, merely to prove "that a defendant deprived someone of property who had `possession or control of, or any license or any interest in' that property."). We reach this conclusion regardless of how appellant viewed the deposits. Even if the deposits were unauthorized loans as appellant contends, CI still became the owner of the funds for purposes of R.C.2913.02 once appellant deposited the funds into CI's account. The fact that CI may have been obligated to repay the loans does not impact CI's status as the owner of the funds in its account for purposes of R.C. 2913.02.
 {¶ 12} Appellant argues that CI was not an owner of the money because it did not know that the money was in its account. We disagree. CI was the owner of funds in its account for purposes of R.C. 2913.02 even though the Dunnagans were unaware that appellant made these deposits. Any other conclusion would lead to absurd results. State ex rel. Dispatch Printing Co. v.Wells (1985), 18 Ohio St.3d 382, 384 (noting that statutes should be construed to avoid unreasonable or absurd consequences); Johnson v. Allonas (1996), 116 Ohio App.3d 447,450-451 (hypothetical situation demonstrates absurd results of statute interpretation). Consider an individual who receives a refund by electronic transfer into his or her bank account due to an earlier overpayment. That individual may not have knowledge of the transfer until he or she checks the balance of the account. Under appellant's argument, if that money was stolen by a third party before the individual became aware the funds were in his or her account, that individual would not be an "owner" of the funds and the third party's action would not be a theft. Appellant's argument is unavailing.
 {¶ 13} In this case, for whatever reason, appellant deposited money into CI's bank account. Therefore, CI took possession of those funds and became the owner for purposes of R.C. 2913.02. Consequently, when appellant transferred money or wrote checks from CI's account to her home equity account without the knowledge and consent of the Dunnagans, she deprived CI of money that it owned.
 {¶ 14} Appellant also contends that the State failed to prove that she acted with the requisite level of intent. Again, we disagree. Theft by deception involves two culpable mental states: (1) knowingly obtaining or exerting control over property by deception, (2) with the purpose to deprive the owner of the property. R.C. 2913.02(A)(3); State v. Hurd (May 4, 1999), Franklin App. No. 96APA03-326; In re Howard (1987),31 Ohio App.3d 1, 3. A person acts "purposely" when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A). The term "knowingly," as used in the requirement of "knowingly obtain or exert control," means that a person, regardless of purpose, is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B); State v. Smith,
Butler App. No. CA2004-11-275, 2005-Ohio-6551, at ¶ 8.
 {¶ 15} The State presented evidence demonstrating that appellant wrote five checks from CI's bank account made payable to her home equity account without the knowledge or consent of CI's owners. When she asked the CI's owners to sign the checks, she did not tell them that the checks were payable to her own Key Bank home equity account. Instead, she noted on the checks that the money was to pay off a credit card or simply an account. CI also had an account with Key Bank, so its owners did not know that the checks were payable to appellant's personal Key Bank account instead of the company's Key Bank account. Additionally, on four occasions, appellant transferred money from CI's Key Bank account into her Key Bank home equity account without the knowledge or consent of the CI owners. Viewing this evidence, as we must, in a light most favorable to the state, a rational trier of fact could have found that appellant knowingly obtained or exerted control over CI's money by deception with the purpose to deprive CI of its money. Cf. State v. Waltz (June 30, 1983), Cuyahoga App. No. 45657 (affirming theft by deception conviction where business manager lied to business owner about profitability to obtain bonus).
 {¶ 16} The State presented sufficient evidence for a rational trier of fact to prove the essential elements of theft beyond a reasonable doubt. Accordingly, appellant's lone assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.