[Cite as *State v. Wiley*, 2017-Ohio-2744.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-686 |
| v. | : | (C.P.C. No. 15CR-5663) |
| Lenore Wiley, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 9, 2017

**On brief:** *Michael DeWine*, *Samual J. Kirk,* Attorney General, and *Anil Patel*, for appellee. **Argued:** *Samuel J. Kirk.*

**On brief:** *Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant. **Argued:** *John W. Keeling.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Lenore Wiley, appeals a judgment entry of the Franklin County Court of Common Pleas issued on September 1, 2016 insofar as it ordered her to pay restitution of $44,316.23 to the Ohio Department of Medicaid. Because we agree that the State presented evidence to show that it suffered an economic loss only in the amount of $1,748.54, the $44,316.23 restitution award was excessive. We therefore reverse and remand for imposition of restitution in an amount consistent with the evidence and instruct that the trial court shall give consideration to Wiley's ability to pay in accordance with R.C. 2929.19(B)(5).

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} A Franklin County Grand Jury indicted Wiley on November 17, 2015 for Medicaid fraud in the range of $7,500 to $150,000 and several other offenses. She pled

No. 16AP-686

"not guilty" to the indicted offenses on February 12, 2016. But on August 3, 2016, she pled "guilty" to Medicaid fraud in the range of $1,000 to $7,500. The State and Wiley's counsel jointly recommended a sentence of community control, along with restitution in an amount to be determined. (Aug. 3, 2016 Plea Tr. at 11-12, filed Nov. 8, 2016; Aug. 31, 2016 Plea Form.) The remaining indicted offenses were dismissed.

{¶ 3} During the plea hearing but after the court accepted her guilty plea, the prosecution called an investigator as a witness to present evidence of the amount of restitution she owed. (Plea Tr. at 14.) The investigator testified that she began investigating Wiley in 2012 in connection with a report of a kickback scheme. *Id.* at 17. Video surveillance revealed that with respect to a Medicaid recipient, "Curry" (with whom Wiley had a kickback scheme), Wiley did not provide services for which Medicaid was billed during the two months of video surveillance. *Id.* at 17-18, 26-28. The amount of wrongful payment totaled $1,748.54. *Id.* at 17-18.

{¶ 4} Wiley was only employed for companies receiving Medicaid funds because she used forged BCI background checks to avoid disqualification for impermissible criminal convictions on her record. *Id.* at 20-21. Thus, the investigator stated that the loss to Medicaid was the total amount billed during Wiley's entire multi-year period of employment, $44,316.23. *Id.* at 20-24. She did admit, however, that the State had no evidence that Wiley had not provided the services for which the State was billed with respect to any recipients other than "Curry." *Id.* at 25-27. The investigator witness also admitted that Wiley had not billed Medicaid, herself, nor did she receive $44,316.23, because Wiley submitted timesheets to her various employers who billed Medicaid. *Id.* at 28-29. Medicaid funded home-health aids like Wiley, the witness testified, make approximately $8 per hour (though the witness did not know how much Wiley was actually paid). *Id.* at 29-30.

{¶ 5} On September 1, 2016, the trial court held a sentencing hearing. (Sept. 1, 2016 Sentencing Tr., filed Nov. 8, 2016.) At sentencing, the State argued that:

> But for the Defendant's actions of actively deceiving these home health agencies, the Ohio Department of Medicaid would not have improperly paid out the monies that it did; and it's for that reason that the State is asking for the full restitution amount, as we noted earlier, of $44,316.23 as a condition of community control.

*Id.* at 4.  The defense contended that potential restitution argued for by the State fell into two categories: first—actual loss for money paid in exchange for services not provided (a small subset of the overall restitution sought), and second—a purported loss for all services reportedly provided by Wiley based on the notion that she was ineligible to provide the services because of her criminal record.  *Id.* at 5-6.  The defense objected to the second category of restitution.  *Id.*

{¶ 6}   The trial court stated its reasoning on restitution:

> I mean, the fact is that you [Wiley] shouldn't have been taking care of these people. Regardless of whether you actually performed the services or not, there's a reason they have requirements to -- you need approval to be able to do this and you falsified background information and passed off old -- passed off old fingerprint background checks as being recently, correct? Is that --
>
> [PROSECUTOR]: Yes, Your Honor, it was just altered past background checks that she would give out.
>
> THE COURT: Yeah. And had -- had these not been paid out -- or, you know, had -- had they been aware of your actual background history, you wouldn't have had these jobs and you wouldn't have had these assignments and you wouldn't have been paid $44,000 and change for the work that you did. And the fact that you did the work doesn't change the fact that you weren't entitled to the money.
>
> As to the restitution, I do find that the State has presented competent and credible evidence and established that they are entitled to restitution in the amount of $44,316.23 for work that Ms. Wiley was not entitled to. This is not a case of unjust enrichment because she shouldn't have been providing those services to begin with. This is fraud, clear and simple.

*Id.* at 9-10.

{¶ 7}   With evidence that Wiley's apparent motive was that she was attempting to support her family and that she had stage III breast cancer, the trial court sentenced her to five years of community control, including the payment of restitution in the amount of $44,316.23.  *Id.* at 7-9, 11; Sept. 1, 2016 Jgmt. Entry at 1.  Wiley now appeals the imposition of restitution.

No. 16AP-686

## II. ASSIGNMENTS OF ERROR

{¶ 8} Wiley asserts three assignments of error for review:

[1.] THE TRIAL COURT ERRED WHEN IT AWARDED RESTITUTION TO MEDICAID FOR SERVICES IT PAID THE DEFENDANT TO PROVIDE BECAUSE THE MEDICAID PROGRAM SUFFERED NO ECONOMIC LOSS SINCE THESE SERVICES WERE ACTUALLY PERFORMED.

[2.] THE TRIAL COURT ERRED WHEN IT IMPOSED A FINANCIAL SANCTION OF RESTITUTION FOR THEFT IN AN AMOUNT GREATER THAN THE OFFENSE THE DEFENDANT PLED GUILTY TO AND WAS CONVICTED OF COMMITTING.

[3.] THE TRIAL COURT ERRED WHEN IT ORDERED THE DEFENDANT TO PAY RESTITUTION IN THE AMOUNT OF $44,316.23, WITHOUT CONSIDERING HER FUTURE ABILITY TO PAY AS REQUIRED BY LAW.

## III. DISCUSSION

### A. First Assignment of Error—Whether the Trial Court Erred in Awarding Restitution in Excess of Proven Economic Loss

{¶ 9} One sanction a sentencing court may impose is:

Restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss. * * * If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that *the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.*

(Emphasis added.) R.C. 2929.18(A)(1).

"Economic loss" means any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense. "Economic loss" does not include non-economic loss or any punitive or exemplary damages.

No. 16AP-686

R.C. 2929.01(L). The Supreme Court of Ohio has reiterated the statutory limitation of restitution to economic losses:

> A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, but *the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense.*

(Emphasis added.) *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, paragraph one of the syllabus. *See also State v. Simmons,* 10th Dist. No. 15AP-708, 2017-Ohio-1348, ¶ 59-61 ("Thus, the court was entitled to order restitution * * * but only if it had competent and credible evidence demonstrating that the amount ordered corresponded to economic loss ODM suffered as a proximate result of defendant's theft").

{¶ 10} The limitation of restitution to direct and proximate economic loss has led courts to hold, for instance, that "restitution is limited to a victim's economic loss. If a victim is reimbursed by a third-party, the victim has not suffered an economic loss." *State v. Crum*, 5th Dist. No. 12 CAA 08 0056, 2013-Ohio-903, ¶ 12. Following this principle, the Twelfth District Court of Appeals, in *State v. Hatmaker*, held that where a victim estimated the value of a destroyed car at $3,500 and received $3,000 from insurance, restitution should have been limited to $500 and the trial court erred in imposing restitution of $1,250. 12th Dist. No. CA2012-10-198, 2013-Ohio-3202, *overruled on other grounds, State v. Collins*, 12th Dist. No. CA2014-11-135, 2015-Ohio-3710, ¶ 29. Adhering to the maxim that loss is the proper measure of restitution, the Eighth District Court of Appeals, in *State v. Labghaly*, held that a restitution award of $13,665 was not properly imposed where, although there was evidence the defendant had been selling counterfeit DVD movies, there was no evidence to establish that the amount of restitution imposed properly accounted for the value of lost sales of the copyright owner. 8th Dist. No. 87759, 2007-Ohio-73. In *State v. Smith*, the Twelfth District found error in a restitution award that included $7,000 paid by a victim to a third party to finish building a garage the offender had promised to build. 12th Dist. No. CA2004-11-275, 2005-Ohio-6551, ¶ 22-23.

No. 16AP-686

The court reasoned that the $7,000 could not properly be considered a "loss" because in exchange for the money the victim received value—a garage. *Id.*

{¶ 11} In this case the appropriate inquiry was whether the State presented evidence that Wiley's actions inflicted an actual economic loss on the State of Ohio in the amount of $44,316.23. It appears to be undisputed that, with respect to the services Wiley failed to provide to recipient "Curry," the State paid for services it never received. (Plea Tr. at 17-18, 26-28.) As to $1,748.54 of the total figure, the State sufficiently proved an economic loss. *Id.* But further than that, the State's proof fell short.

{¶ 12} The State's investigator admitted that the State had no evidence that Wiley had failed to provide the services for which the State was billed with respect to any recipients other than "Curry." *Id.* at 25-27. The investigator also presented no evidence to suggest that Wiley had provided defective or worthless services. Rather, the State argued and the trial court agreed, that since Wiley was disqualified (by reason of her criminal background) from working the jobs she was working, she had no right to the money she earned from the state's Medicaid funding. As the trial court put it:

> [H]ad [the State] been aware of your actual background history, you wouldn't have had these jobs and you wouldn't have had these assignments and you wouldn't have been paid $44,000 and change for the work that you did.[1] And the fact that you did the work doesn't change the fact that you weren't entitled to the money.
>
> As to the restitution, I do find that the State has presented competent and credible evidence and established that they are entitled to restitution in the amount of $44,316.23 for work that Ms. Wiley was not entitled to. This is not a case of unjust enrichment because she shouldn't have been providing those services to begin with.

(Sentencing Tr. at 10.) This analysis erroneously shifts the focus from the appropriate legal question--whether the State suffered an economic loss.

{¶ 13} While both sides agree that had Wiley not deceived the State of Ohio in order to provide home health services for the various Medicaid recipients she served, she

---

[1] There is no evidence suggesting that Wiley actually received anything approximating $44,000. The evidence was rather that Wiley submitted timesheets to her various employers who, in turn, billed Medicaid for that amount. (Plea Tr. at 28-29.) Wiley was then paid hourly, presumably at a lesser rate and likely on the order of $8 per hour. *Id.* at 30.

No. 16AP-686

would not have held those jobs or been paid for them, no evidence suggests the State actually suffered a proximate loss from Wiley's actions.

{¶ 14} No evidence was presented to suggest that the Medicaid recipients Wiley served would not still have needed services or that the State would not still have had to pay someone to provide such services. The State still would have paid for services and the recipients still would have received services, whether it was Wiley or someone else providing them. Though Wiley did not possess all necessary qualifications for providing the services, the State presented no evidence to the effect that the services Wiley did provide were incompetently rendered in any respect such that they would have been reduced in material value. Based on what Wiley did, the State's economic position (other than with respect to recipient "Curry") did not change because of her crime. With or without Wiley, these Medicaid recipients needed Medicaid services and the State was required to pay for them. This is not a loss.

{¶ 15} Yet, citing no case law in support, the State argues that Wiley's services were effectively worthless because Wiley was "legally disqualified from performing any work from the outset." (Feb. 1, 2017 State Brief at 8.) We have previously recognized that an attorney who defrauds his client is not entitled to collect a fee for his services thus diminishing his client/victim's restitution by a contractual fee offset. *State v. Silverman*, 10th Dist. No. 05AP-837, 2006-Ohio-3826, ¶ 160. Thus a restitution award in a case where an attorney has defrauded a client may properly include (as economic loss) both the amount stolen in the fraud and the amount paid by the client to the attorney as a fee. *Id.* at ¶ 158-60. It does not follow from this that the State similarly should be able to recover fees paid to Wiley for services rendered under false pretenses. (State Brief at 9-10.) Unlike in attorney fee-forfeiture cases,[2] no evidence was presented that the services Wiley provided were valueless, even though she was technically disqualified from providing them by virtue of her criminal background. And the State has provided no authority to support such a notion in the Medicaid provider context.

---

[2] The *Silverman* case seems to rest on the principle that the services of a traitorous advocate are actually valueless. *Id.* at ¶ 159, citing Restatement of the Law 3d, Governing Lawyers (2000), Section 37; *see also* Restatement of the Law 3d, Governing Lawyers (2000), Section 37, at comment b ("a lawyer's clear and serious violation of a duty to a client destroys or severely impairs the client-lawyer relationship and thereby the justification of the lawyer's claim to compensation").

No. 16AP-686

{¶ 16} Other than the $1,748.54 of services billed but not provided with respect to recipient "Curry," the State presented no evidence that it suffered an economic loss. Based on the evidence, the trial court erred in imposing restitution in excess of $1,748.54.

{¶ 17} We sustain Wiley's first assignment of error.

## B. Second Assignment of Error—Whether the Trial Court Erred in Ordering Restitution in Excess of the Fraud Value Range of the Offense to which Wiley Pled Guilty

{¶ 18} Wiley pled guilty to one count of Medicaid fraud as a fifth-degree felony. (Aug. 31, 2016 Plea Form.)  R.C. 2913.40(E) provides that Medicaid fraud is a fifth-degree felony when the "value of property, services, or funds obtained in violation of this section is one thousand dollars or more and is less than seven thousand five hundred dollars." Wiley argues that because she was only convicted of fraud within that range, no restitution amount equal to or in excess of $7,500 could legally be imposed.  (Dec. 6, 2016 Wiley Brief at 24-40.)   We have already determined that the State did not present evidence of economic loss beyond $1,748.54 and the trial court therefore erred in imposing restitution greater than that amount.  Whether the trial court could have legally imposed restitution equal to or in excess of $7,500 is now a moot question.

{¶ 19} Wiley's second assignment of error is moot and considered no further.

## C. Third Assignment of Error—Whether the Trial Court Erred in Ordering Restitution Without Considering Wiley's Ability to Pay

{¶ 20} "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5).  In construing this requirement, we have stated:

> When determining a defendant's present and future ability to pay, there are no express factors which must be considered, or specific findings which must be made. *State v. Finkes* (March 28, 2002), Franklin App. No. 01AP-310, 2002-Ohio-1439. Further, while a trial court may hold a hearing to determine if the defendant is able to pay the sanction, a hearing is not required by statute. Nonetheless, there merely must be some evidence in the record the trial court considered defendant's present and future ability to pay the sanction. *State v. Fuller*, Lucas App. No. L-02-1387, 2004-Ohio-2675, at ¶ 8.

No. 16AP-686

*State v. Conway*, 10th Dist. No. 03AP-1120, 2004-Ohio-5067, ¶ 7. While the trial court stated in its judgment entry that, "[t]he Court has considered the Defendant's present and future ability to pay a fine and financial sanction, pursuant to R.C. 2929.18," it made no express consideration of the issue or finding on the record to this end. (Jgmt. Entry at 2.) Regardless of what restitution amount may be ordered, even under the simple admonition in *Conway*, some genuine consideration of ability to pay must occur. *Id.*

{¶ 21} However, since we have sustained Wiley's first assignment of error, this issue is moot.

{¶ 22} Wiley's third assignment of error is moot and considered no further.

## IV. CONCLUSION

{¶ 23} Restitution is for economic loss suffered by the victim as a direct and proximate result of the commission of the offense. The evidence presented by the State limits restitution to no more than $1,748.54. This case is remanded to the Franklin County Court of Common Pleas for a new hearing on restitution with instructions that the trial court should limit its imposition of restitution to the economic loss suffered by the State and thereafter consider the defendant's ability to pay. The first assignment of error is sustained and the remaining two assignments are moot.

*Judgment reversed and remanded with instructions.*

KLATT and SADLER, JJ., concur.

———————————