[Cite as *State v. Baker*, 2016-Ohio-315.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :
      Plaintiff-Appellee               :     Appellate Case No. 26703
                                                 :
                                                 :     Trial Court Case No. 14-CR-3851/1
v.                                               :
                                                 :     (Criminal Appeal from
                                                 :      Common Pleas Court)
KELSEY BAKER                                     :
                                                 :
      Defendant-Appellant              :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of January, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

SALLYNDA DENNISON, Atty. Reg. No. 0068027, 500 South Front Street, Suite 102, Columbus, Ohio 43215
and
ANGELA MILLER, Atty. Reg. No. 0064902, 322 Leeward Drive, Jupiter, Florida 33477
      Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Kelsey Baker appeals from her conviction and

sentencing for Vandalism and Burglary. Baker argues that she was denied her due process rights when counsel for co-defendant made prejudicial remarks in closing arguments. Baker contends that the trial court erred by ordering restitution without sufficient evidentiary support in the record. Baker also argues that the evidence was insufficient to support her convictions. Baker contends that the trial court erred by refusing to provide the jury with instructions on the lesser-included offense of Criminal Damaging. Finally, Baker argues that the terms of her community control sanction are not reasonably related to the statutory purposes of sentencing. The State argues that the remarks made in closing arguments do not amount to plain error, and that proper jury instructions were given. In regards to sentencing, the State argues that restitution was based on evidence provided in the pre-sentence investigation report, and that the trial court did not abuse its discretion in ordering conditions for community control. The State also argues that sufficient evidence was admitted to support the convictions.

{¶ 2} We conclude that there is sufficient evidence to support the convictions, that Baker was not unfairly prejudiced by the closing arguments of counsel for the co-defendant, and that the trial court did not err by refusing to give an instruction on the lesser-included offense of Criminal Damaging. We conclude that the trial court did err in ordering restitution without a hearing, and without determining her ability to pay the sanctions. We also conclude that certain conditions of Baker's community control sanctions are not reasonably related to her rehabilitation. That part of the judgment of the trial court ordering restitution, and ordering that Baker change her employment and her mental health therapist are Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for a restitution hearing and for further proceedings

consistent with the opinion.

## I. Factual Background

{¶ 3} Prior to the incident that led to her arrest, Baker was in a relationship with Michael Kerr, and had access to his residence at 154 Cliff Street in Dayton. Baker's cousin, Stacy Baker, was in a relationship with Kerr's roommate, so she also had access to the same residence. After Kerr ended the relationship, Baker contacted Kerr, asking to come by his house to give him a birthday present. Kerr responded by text, telling her that he was taking his sister shopping, and would not be home; in fact, he was out with his new girlfriend. Kerr ignored additional texts from Baker. Baker and her cousin entered the unlocked and empty house, and when Baker discovered evidence of the new girlfriend, she became very upset. Baker began throwing things, destroying dishes and other personal property. Baker picked up a golf club and started swinging at the television. Windows in the house and the garage were broken. Baker then took a gallon of blue paint from the garage and splashed paint all over the house. After she returned to her car, Baker drove the car into the garage door, causing structural damage to the garage. When Kerr returned home, he saw Baker and her cousin exit the house, get in Baker's car, crash the vehicle into the garage, then quickly drive away, leaving behind on the garage floor the vehicle's side view mirror and a license plate. Kerr called the police. While he was waiting for the police to arrive, Baker and her cousin returned to Kerr's residence. An officer testified that Baker admitted using a bat to break the windows and claimed she had a key to the front door. The officer did not find the key on Baker's key ring.

{¶ 4} At trial, Kerr estimated that his losses for the destruction of his personal

property exceeded $10,000, but no receipts or estimates were offered in evidence. The owner of Kerr's residence, William Hawkins, estimated that the cost to repair the structural damage, garage door, windows, wall, cabinets and floors was $24,000, but no written estimates were offered in evidence. Hawkins testified that he paid $15,000 to purchase the house, which is the amount listed with the county recorder as its tax value. The presentence investigation report reflects that Kerr and Hawkins obtained estimates for the cost of repair or replacement, but no written estimates were included in the report. The report reflects that Hawkins did not have homeowner's insurance. The report does not indicate whether Kerr had renter's insurance that may have covered some of his losses.

{¶ 5}  The PSI report also reflects that Baker claimed to have a job at a warehouse, earning $11 per hour, but she did not verify her employment at that time. This employment was subsequently verified by a letter submitted by her employer and attached to Baker's sentencing memorandum.   The PSI report indicates that Baker previously worked as a dancer at a show club, and as a waitress. She was receiving health insurance through Medicaid, and $340 a month in food assistance benefits. Baker has custody of her four-year-old child. Baker is being treated by a psychologist for mental health issues that preceded the conduct that led to her convictions.[1]

## II. The Course of Proceedings

{¶ 6}  Baker was indicted on one count of Vandalism, a felony of the fifth degree,

---

[1] To protect the privacy of Baker's medical records, we will not quote Baker's diagnosis or patient history related to her psychological treatment, which we reviewed in the PSI report.

in violation of R.C. 2909.05(A), and one count of Burglary, a felony of the third degree, in violation of R.C. 2911.12(A)(3). The indictment named Baker's cousin, Stacy Baker, as a co-defendant for the Burglary charge. The trial proceeded against both co-defendants jointly. Baker requested a jury instruction for the lesser-included offense of Criminal Damaging. This request was denied. During closing arguments, defense counsel for Baker's cousin argued that even if the jury found that Kelsey Baker trespassed on the property, that did not mean that Stacy was also engaged in trespassing, since there was evidence that Stacy had permission to enter, and remain upon, the premises. The jury found Baker guilty on both counts. Her cousin Stacy was acquitted.

{¶ 7} After a PSI report was prepared and reviewed by the trial court, a sentencing hearing was conducted. Prior to the sentencing hearing, Baker filed a sentencing memorandum disputing the estimates of damage discussed at trial as insufficient proof of actual damages for any order of restitution. The memorandum urged the trial court to sentence Baker to community control sanctions to permit her to continue her psychological counseling and to permit rehabilitation through the support of family and friends. Letters from her employer, her treating psychologist, and her grandmother were attached to the memorandum. No restitution hearing was conducted. At the sentencing hearing, the trial court sentenced Baker to community control sanctions for a period of five years. The sanctions are set forth in the termination entry as follows:

1. Defendant's compliance with the General Conditions of this Court for probationers;

2. A term of Intensive Probation Supervision for a period not to exceed five (5) years;

3. A requirement that the offender establishes contact with the Community Employment Class through Goodwill Easter Seals and complies with any recommendations made by that agency. The offender must obtain and maintain full-time verifiable employment; the offender must get a new job; the offender must not work in any adult entertainment establishments; P.O. must give approval to whatever job the offender seeks;

4. A requirement that the offender pays restitution in the amount of $10,235.00 to Mike Kerr with a payment schedule of $160.00 per month;

5. A requirement that the offender pays restitution in the amount of $24,476.95 to William Hawkins with a payment schedule of $400 per month;

6. A requirement that the offender completes all treatment at Samaritan Behavioral Health Institute and complies with any further treatment recommended by that agency, the Court, or the Division of Criminal Justice Services;

7. A requirement that the offender not have contact with the victim, Mike Kerr, or come within 1,000 feet of their person, residence, or place of employment (even if the victim consents to contact);

8. A requirement that the offender not have contact with the co-defendant, Stacy Baker;

9. A requirement that the offender not be in any building, structure, room, vehicle or place when you know or have reasonable cause to know that illegal drugs, stolen property or any firearms are present;

10. A requirement that the offender abstains from use of illegal drugs, drugs of abuse, and alcohol;

11. A requirement that the offender serve 60 consecutive days of local jail time to be set up by the probation officer within 10 days of disposition.

{¶ 8} From her conviction and sentence, Baker appeals. After filing the appeal, Baker asked this court to stay some of the conditions that are part of her sentence. We agreed to stay the order of restitution, the order to serve local jail time, and the order to obtain counseling from Samaritan Behavioral Health, as long as she continued treatment with her current psychologist.

**III. Remarks During Closing Argument Were Not Shown to Cause Unfair Prejudice**

{¶ 9} For her First Assignment of Error, Baker asserts as follows:

WHEN THE ATTORNEY FOR THE CO-DEFENDANT ARGUES TO THE JURY THAT THE DEFENDANT COMMITTED BURGLARY AND THAT THE STATE PROVED THE ESSENTIAL ELEMENT OF TRESPASS FOR THE DEFENDANT ONLY, THE RESULT IS A DEPRIVATION OF DUE PROCESS AND VIOLATES THE FAIR TRIAL RIGHTS OF THE ACCUSED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

{¶ 10} Baker argues that her rights to a fair trial and to due process were denied when counsel for her co-defendant admitted in his closing argument to the jury that the State had proved that Baker committed the offense of trespass, but that his client did not

trespass on the property. Baker argues that she and her co-defendant should have been tried separately, because the defense strategy of her co-defendant was antagonistic to her defense. However, no motion to sever the cases into two trials was ever filed or argued in the trial court. Issues not raised in the trial court are not preserved for appellate review, but may only be reviewed for plain error. We have found plain error when three elements are met: (1) there must be an error or deviation from a legal rule; (2) that error must be plain, defined as "an obvious defect in the trial proceedings"; and (3) the error must have affected a "substantial right," meaning the error must have affected the ultimate outcome, and a correction is needed to "prevent a manifest miscarriage of justice." *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 9, quoting *State v. DeLong*, 2d Dist. Montgomery No. 20656, 2005-Ohio-1905, ¶ 17, citing *State v. Barnes*, 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002).

**{¶ 11}** The transcript reveals that counsel for the co-defendant did not assert that Baker had committed trespass, but merely suggested that even if the jury found that Baker had trespassed, that finding did not automatically mean that the co-defendant, Stacy Baker, had also trespassed. The pertinent portion of closing arguments reveals these statements made by counsel for Stacy, the co-defendant:

> The charge, with respect to Stacy, only is burglary. That is to trespass. In Mike Kerr's house, I'll make it easy; to trespass in Mike Kerr's house with the intent to commit a crime on the inside, to wit, criminal damaging, trash the place. This is the charge.

> There are two problems with that. One of them is that Stacy can be in the house without trespassing, even if you find that Kelsey was

trespassing. Kelsey can trespass without Stacy trespassing. How do you know that? Well, Kelsey knew nobody was there; she also said she's there without him at times. But Kelsey knows there's nobody there.

Did Stacy know that? No. Stacy didn't know that nobody was there. She walked in behind Kelsey and she's had a sexual relationship with the roommate for a long time. Never had any issue being there by herself. She's allowed to be there it seems; she's there all the time.

And so hypothetically, even - - if you do find that Kelsey was trespassing, that does not mean you need to find that Stacy was trespassing. Indeed the evidence shows otherwise.

Trial Transcript at pgs. 627-628.

{¶ 12} These statements do not assert that Baker trespassed on Kerr's property. The transcript reveals appropriate statements made by the co-defendant's counsel urging the jury to treat the two cases separately. Baker has failed to show how these statements unfairly prejudiced her right to a fair trial. We conclude that the jury was not misled by the statements in closing argument, and Baker was not prejudiced by their admission. Therefore, Baker's First Assignment of Error is overruled.


**IV. A Restitution Hearing Is Required When the Amount is Disputed**

{¶ 13} For her Second Assignment of Error, Baker asserts as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING RESTITUTION IN AN AMOUNT DISPUTED BY APPELLANT BAKER WITHOUT CONDUCTIONG A HEARING REGARDING THE

AMOUNT OF RESTITUTION PRIOR TO OR AT SENTENCING. R.C. 2929.18(A)(1)

{¶ 14} In the sentencing memorandum filed before the sentencing hearing, Baker disputed the amount of potential restitution, arguing that insufficient evidence was presented at trial to support the actual loss suffered by the victims. We have acknowledged that when restitution is disputed, the court must hold a restitution hearing. *State v. Sanner*, 2d Dist. Greene No. 2007-CA-13, 2008-Ohio-1168, ¶ 22.

{¶ 15} We have held that "[t]here must be competent, credible evidence in the record to support the trial court's order of restitution 'to a reasonable degree of certainty'. The amount of restitution requested should, if necessary, be substantiated through documentary or testimonial evidence." *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶10, citing *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 35. The trial court relied on the PSI report, which does not contain sufficient evidence from which the court could determine, within any degree of certainty, the amount of the victim's actual loss. A hearing on restitution should be conducted to validate the verbal estimates, and to document actual losses.

{¶ 16} Baker also argues that because the homeowner's estimated damages far exceed the value of the house, he will be unjustly enriched if restitution is ordered in an amount greater than the property value. We disagree. The purpose of restitution to the victim of a crime involving real property damage should be to restore the property as close as reasonably feasible to the condition in which it existed before the crime occurred. *See* R.C. 2909.11(B). The defendant may be ordered to provide restitution in the amount of the victim's actual loss. *State v. Colon*, 185 Ohio App. 3d 671, 2010-Ohio-492, 925 N.E.

2d 212, ¶ 7 (2d Dist.). R.C. 2929.18 provides, "[i]f the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." At a restitution hearing, admissible evidence, such as written estimates or payment receipts, must be submitted to substantiate the actual cost to repair or replace both the real and personal property.

{¶ 17}  Baker's Second Assignment of Error is sustained.

### VI. Sufficient Evidence Was Admitted to Support the Convictions

{¶ 18} For her Third Assignment of Error, Baker alleges as follows:

WHERE THE STATE FAILED TO PRESENT EVIDENCE THAT APPELLANT COMMITTED A TRESPASS, HER CONVICTION FOR BURGLARY UNDER R.C. 2911.12 VIOLATED ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. ADDITIONALLY, THE STATE FAILED TO ESTABLISH "SERIOUS PHYSICAL HARM" FOR VANDALISM, PURSUANT TO R.C. 2909.05, VIOLATING APPELLANT'S DUE PROCESS RIGHTS

{¶ 19}  Baker argues that the State failed to prove all the essential elements of both charged offenses. "A sufficiency of the evidence argument disputes whether the

State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins,* 78 Ohio St. 3d 380, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, "the relevant inquiry is whether any rational finder of fact, after viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dennis,* 79 Ohio St. 3d 421, 430, 683 N.E. 2d 1096 (1997), citing J*ackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979). A guilty verdict will not be disturbed on appeal unless, "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 20} To find Baker guilty of Vandalism, as indicted under R.C. 2909.05(A), the trier of fact would have to find beyond a reasonable doubt that she knowingly caused serious harm to an occupied structure. Baker argues that the State failed to prove harm exceeding $1,000, as required by R.C. 2909.05(F)(2), pointing out the testimony of the homeowner that the tax valuation of $15,000 for the property did not change after the property was damaged. But the tax appraisal was not the only evidence of damages. Pursuant to R.C. 2909.11(B), damages can be measured by the reasonable costs of restoring the property or replacing personal property with new property of like kind and quality. The tenant, Kerr, testified that his lost personal property was valued at more than $1,000 and the homeowner, Hawkins, testified that the estimate of repairs to the house exceeded $1,000. "Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market

value of the property." *Smith v. Padgett*, 32 Ohio St.3d 344, 347, 513 N.E.2d 737 (1987). R.C. 2909.11(A) provides that a jury need not return a finding of the exact amount of physical harm, as long as the amount is greater than $1,000, as required by R.C. 2909.05. The testimony of Kerr and Hawkins constitutes sufficient evidence from which a reasonable jury could find, beyond reasonable doubt, that Baker caused damage in excess of $1,000, which is sufficient to convict Baker of Vandalism.

{¶ 21} To find Baker guilty of Burglary, under R.C. 2911.12(A), the trier of fact had to find, beyond a reasonable doubt, that by force, stealth or deception she trespassed in an occupied structure with the purpose to commit Vandalism. Pursuant to R.C. 2901.01, force means any violence, compulsion, effort or constraint exerted or used by any means upon or against a person or thing to gain entrance. Trespass means knowingly entering or remaining on the land or premises of another, without a privilege or permission to be there. R.C. 2911.21. Baker argues that she had Kerr's permission to be on the premises, and therefore did not commit a trespass. However, Kerr's testimony was that he had broken off his relationship with Baker, and when she asked him if she could come to his residence to deliver a birthday present, he did not give his permission. Trial Transcript at pgs. 269-272, 317.   Therefore, the trier of fact did have sufficient evidence to support a finding that Baker was trespassing, because Kerr had not given her permission to enter the house on that evening.

{¶ 22} Baker's Third Assignment of Error is overruled.


## VI. The Trial Court Was Not Required to Instruct on the
## Lesser-Included Offense of Criminal Damaging

{¶ 23} For her Fourth Assignment of Error, Baker alleges as follows:

THE TRIAL COURT ERRED IN REFUSING TO INCLUDE DEFENDANT BAKER'S REQUESTED INSTRUCTION ON CRIMINAL DAMAGING AS A LESSER INCLUDED OFFENSE TO VANDALISM IN ITS CHARGE TO THE JURY. U.S. CONST. AMENDS VI, XIV; OHIO CONST. ART. 1 § 10.

{¶ 24} Baker argues that the trial court erred by denying her request for a jury instruction that would have allowed the jury to consider whether Baker was guilty of Criminal Damaging, but not Vandalism. We recently addressed this issue as follows:

"The question of whether a particular offense should be submitted to the finder of fact as a lesser included offense involves a two-tiered analysis." (Citation omitted) *State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6. "The first tier, also called the 'statutory-elements step,' is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense." *Id.*, citing *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). "The second tier looks to the evidence in a particular case and determines whether ' "a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." ' " *Id.,* quoting *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13. "[A] charge on the lesser offense is required 'only where the evidence presented at trial would reasonably support both an acquittal of the crime

charged and a conviction upon the lesser included offense.' " *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192, quoting *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. Where the evidence meets this requirement, a trial court has an obligation to give a lesser-included-offense instruction, even over the objection of a defendant who wishes to pursue an "all or nothing" defense. *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207.

*State v. Pullen*, 2d Dist. Montgomery No. 25829, 2015-Ohio-552, ¶ 21.

**{¶ 25}** We recognize that Criminal Damaging is a lesser-included offense of Vandalism. *In re J.H.*, 6th Dist. Erie No. E-11-038, 2013-Ohio-632, ¶ 10. But the evidence presented at trial did not reasonably support a conviction of Criminal Damaging and an acquittal on the indicted charge of Vandalism. A conviction for Criminal Damaging and an acquittal on Vandalism would have required the jury to find that Baker knowingly caused physical harm to the property of another, but that her conduct did not knowingly cause serious physical harm to an occupied structure or any of its contents. "Serious physical harm" is defined as harm to property that results in loss to the value of the property in excess of $1,000. R.C. 2909.05(F)(2). Both offenses require a jury to find that Baker caused physical harm to Kerr's property. The evidence of the extent of the loss to the property came from the owner of the house and the owner of the personal property, who both testified that their losses far exceeded one thousand dollars. The nature of the damages, which included both structural damage to the premises, extensive damage to personal property, and the indiscriminate splashing of blue paint throughout the premises,

militates against a finding that the resulting damages did not exceed $1,000. Therefore, based on the evidence in the record, we conclude that the trial court did not err by refusing to give an instruction on Criminal Damaging.

{¶ 26} Baker's Fourth Assignment of Error is overruled.

## VII. Three of the Conditions of the Community Control Sentence Are Not Reasonably Related to Rehabilitation

{¶ 27} For her Fifth Assignment of Error, Baker alleges as follows:

THE SENTENCE OF THE TRIAL COURT SHOULD BE REVERSED AND REMANDED GIVEN THAT IT DOES NOT COMPORT WITH THE PURPOSES OF FELONY SENTENCING. R.C. 2929.11

{¶ 28} Baker contends that several conditions of her community control sanctions are not reasonably related to the purposes of sentencing. Specifically, Baker challenges the trial court's order for her to quit her job and find new employment, and that, even while unemployed, she must pay $560 a month toward a restitution order in excess of $35,000. Baker also claims that the order to change therapists is not reasonably related to her rehabilitation, because it destroys continuity of care and the progress she is making toward improved mental health. The State argues that the trial court properly considered all statutory factors, and did not abuse its discretion in ordering specific sanctions.

{¶ 29} We have held that when deciding what conditions should accompany a community control sanction, courts must consider how to achieve, in the unique circumstances of the case, the purposes and principles of sentencing, which are to protect the public, to punish the offender, and to impose sanctions that are designed for

rehabilitation, with a goal to changing the defendant's behavior. *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 12-13 (2d Dist.). Other appellate courts have established factors to consider when imposing community control sanctions, including whether the condition imposed, "(1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Oates*, 2013-Ohio-2609, 993 N.E. 2d 846 (3d Dist.); *State v. Fuller,* 2015-Ohio-523, 27 N.E. 3d 574 (8th Dist.). Pursuant to R.C. 2929.17 and R.C. 2929.18, the trial court has a broad range of discretion to determine appropriate sanctions that are related to rehabilitation. "Generally, abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal or unsupported by the evidence." *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.). A decision is unreasonable if there is no sound reasoning process that would support that decision. *State v. Jones*, 2d Dist. Montgomery No. 25315 and 25316, 2013-Ohio-1925, ¶ 32.

{¶ 30} With respect to financial sanctions, including restitution, the court must consider whether the defendant is indigent or has the ability to pay the sanctions. R.C. 2929.18(E) states, "[a] court that imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether the offender is able to pay the sanction or is likely in the future to be able to pay it." The PSI report indicated that Baker was earning $11.00 per hour at the warehouse job that she was ordered to quit. If Baker is unemployed, it is unreasonable to conclude that she has the ability to pay $560 per month in restitution payments. Even if she were allowed to remain working at the warehouse,

or if she were to obtain a minimum wage or low paying job through the mandated training at Goodwill Services, the monthly restitution amount should not exceed the percentage of her wages allowed to be garnished under R.C. 2716.02 and R.C. 2929.18(D)(1)(d), which limits the monthly payment to 25% of the debtor's personal disposable income. Upon remand for a restitution hearing, as discussed above, the trial court should consider Baker's ability to pay and create a reasonable repayment plan to begin when she gains full time employment.

{¶ 31} At the time of the sentencing hearing, Baker was working in a warehouse, which is not related to the crime, and is not a job involving any type of criminal enterprise or placing her in an unsafe or unhealthy environment. Baker's employer wrote a letter, in her support, aware of the facts of the offense and the conviction. Baker questions how the order to quit this job is reasonably related to her rehabilitation. The only evidence in the record regarding this employment is contained in the employer's letter submitted with Baker's sentencing memorandum, which reveals an employer supportive of her rehabilitation needs. The trial court provided no sound reasoning process for the order conditioning Baker's community control sanctions on quitting her current employment. We conclude that the trial court abused its discretion by ordering a change of employment without a sufficient evidentiary basis to conclude that quitting her job and seeking new employment was reasonably required for her rehabilitation.

{¶ 32} Based on a letter attached to Baker's sentencing memorandum, the trial court was made aware that Baker was already being treated by a psychologist for mental health issues that preceded her criminal conduct. Nonetheless, the trial court ordered Baker to change therapists by obtaining treatment at Samaritan Behavioral Health

Institute. Baker did submit a letter from her therapist, attached to her sentencing memorandum, confirming that she was committed to therapy, had shown progress and "if allowed to remain in treatment, Kelsey's prognosis for change is excellent." The record does not contain any support for finding that the trial court considered this report from Baker's treating psychologist, and contains no sound reasoning process for the order conditioning Baker's community control sanctions on changing therapy professionals. We conclude that the court abused its discretion by ordering a change of therapists without a sufficient evidentiary basis to conclude that a change in therapy providers was reasonably required for her rehabilitation.

{¶ 33} Baker's Fifth Assignment of Error is sustained in part, to the extent set forth herein.

## VIII. Conclusion

{¶ 34} Baker's First, Third, and Fourth Assignments of Error having been overruled, and her Second and Fifth Assignments of Error having been sustained, that part of the judgment of the trial court ordering restitution, a change of jobs and a change in therapists is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., concurring in part and dissenting in part:

{¶ 35} While I agree with most of the majority opinion, I very respectfully dissent from the decision to sustain the Fifth Assignment in part and to remand this matter for reconsideration of the community control conditions. In my opinion, the majority is

engaging in what some might describe as "helicopter sentencing" – hovering over the trial court and interfering with its sound exercise of discretion in a paternalistic fashion.

**{¶ 36}** Although one may disagree with the trial court here, an appellate court's disagreement with a discretionary trial court sentencing call does not constitute an abuse of discretion. Rather, an abuse of discretion exists where no sound reasoning process supports the trial court decision. *State v. Morgan*, 2d Dist. Montgomery No. 26132, 2014-Ohio-5071, ¶11, citing *State v. Brandon*, 2d Dist. Montgomery No. 23336, 2010-Ohio-1902, ¶16. I believe the trial court's sentence is adequately supported by reason and the record.

**{¶ 37}** Before discussing the community control sanctions, I should note that I also disagree with comments made about how the lower court should proceed on remand regarding restitution. Specifically, at ¶ 30 of the majority opinion, we state, with respect to the amount of restitution that was previously ordered, that "[i]f Baker is unemployed, it is unreasonable to conclude that she has the ability to pay $560 per month in restitution payments." We then state that, on remand, "the trial court should consider Baker's ability to pay and create a reasonable repayment plan to begin when she gains full-time employment." *Id.*

**{¶ 38}** As a preliminary matter, our comment about the amount of restitution that was previously ordered to be paid unnecessarily discusses a moot matter, since we are reversing the restitution order and remanding the matter for a hearing. The trial court will decide on remand what, if any, restitution is required. Our observations in that regard are also premature, since the reasonableness of that amount, if any, is an issue to be decided if and when a subsequent appeal occurs.

**{¶ 39}** In this regard, R.C. 2929.18(E) says that "[a] court that imposes a financial sanction upon an offender *may* hold a hearing *if necessary* to determine *whether the offender is able to pay the sanction or is likely in the future to be able to pay it.*" (Emphasis added.)

**{¶ 40}** Although holding a hearing is discretionary if the record contains sufficient evidence on the point, an offender's ability to pay is a factor that courts should consider. This is not a controversial matter. In fact, R.C. 2929.19(B)(5) specifically states that:

> *Before imposing a financial sanction under section 2929.18* of the Revised Code or a fine under section 2929.32 of the Revised Code, *the court shall consider the offender's present and future ability to pay the amount of the sanction* or fine.

(Emphasis added.)

**{¶ 41}** We have previously said that trial courts are not "obligated to make any express findings on the record regarding a defendant's ability to pay a financial sanction, although in our opinion that is clearly the better practice." *State v. Felder*, 2d Dist. Montgomery No. 21076, 2006-Ohio-2330, ¶ 64, citing *State v. Ayers*, 2d Dist. Greene No. 2004-CA-0034, 2005-Ohio-44. *See also, e.g., State v. Parker*, 2d Dist. Champaign No. 03-CA-0017, 2004-Ohio-1313, ¶ 42. However, we have stressed that "the record must affirmatively reflect the court's consideration of those questions in the offender's case." *State v. Whitfield*, 2d Dist. Montgomery No. 22432, 2009-Ohio-293, ¶ 150, citing *State v. Martin*, 140 Ohio App.3d 326, 747 N.E.2d 318 (4th Dist.2000). Presumably, trial courts are aware of our long-standing position on this matter, and are also aware of the content

of R.C. 2929.19(B)(5).

{¶ 42} More concerning is the majority's reversal of the court-ordered community control sanctions. In this regard, the majority first finds fault with the court's order to Baker to quit her warehouse job, which the majority contends lacks a sound reasoning process. The majority also states that the trial court ordered Baker to change therapists, and contends that the court's decision is not based on a sound reasoning process. I will address each item separately.

A. The Order Regarding Baker's Employment

{¶ 43} At ¶ 31 of the opinion, the majority concludes that the trial court "abused its discretion by ordering a change of employment without a sufficient evidentiary basis to conclude that quitting her job and seeking new employment was reasonably required for [Baker's] rehabilitation."

{¶ 44} Trial courts have broad discretion under R.C. 2929.15(A)(1) to impose community control sanctions. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. *Accord State v. Brewer*, 2d Dist. Montgomery No. 26153, 2015-Ohio-693, ¶ 43; *State v. Morrow*, 9th Dist. Lorain Nos. 14CA010552, 14CA010553, 2015-Ohio-2627, ¶ 9.

{¶ 45} In *State v. Jones*, 49 Ohio St.3d 51, 550 N.E.2d 469 (1990), the Supreme Court of Ohio outlined a test to be applied in deciding whether a probation condition is "related to the 'interests of doing justice, rehabilitating the offender, and insuring his good behavior * * *.' " *Id.* at 53, quoting former R.C. 2951.02(C). This test requires courts to consider "whether the condition (1) is reasonably related to rehabilitating the offender, (2)

has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Id.*

**{¶ 46}** Although "probation" was replaced by community control with the passage of Am.Sub. S.B. No. 2 in 1995, the court indicated in *Talty* that "[t]he community-control statute, despite changing the manner in which probation was administered, did not change its underlying goals of rehabilitation, administering justice, and ensuring good behavior * * *." *Talty* at ¶ 16. As a result, the court found there is "no meaningful distinction between community control and probation for purposes of reviewing the reasonableness of their conditions." *Id.* The test in *Jones*, therefore, is to be applied in assessing community control sanctions that have been imposed.

**{¶ 47}** At the sentencing hearing, the trial judge stated that she had reviewed the presentence investigation, the sentencing memorandum, and attachments to the memorandum, which included a separate written statement from defense counsel. Transcript of Proceedings, Vol. III, pp. 672-673. The court also stated:

> I also, obviously, had the opportunity to hear the evidence at trial and observe the exhibits which included a number of photographs. And I can only say that it took a great deal of energy to do what you chose to do in that house. * * *

> Additionally, it's evident from many different things that you don't accept responsibility for your actions. Instead, you continually blame [the victim].

> * * *

And instead of accepting responsibility for your behavior, you continually victimize yourself. And that was evidenced in the sentencing memorandum on your behalf and in your behavior and in the arguments at trial is that you're the constant victim, you're not responsible for your behavior.

And while there's been many suggestions that all you care about is your child and being a good mom, it's really hard to accept that given the choices you made, the choices you continue to make, the testimony by your cousin that the two of you engaged in some pretty heavy drinking and then decided – well, among many other things. It's really challenging to accept that you are what you say you are which is a constant victim.

*Id.* at pp. 673-674.

**{¶ 48}** The court went on to discuss the community control sanctions that would be imposed, including that Baker attend the Community Employment class at Goodwill and obtain verifiable employment. The court then stated that:

I am not thrilled with your employment at your current place of employment particularly because of the letter I received from your current employer who was somebody you were with that night. He said it in his letter that was provided to me.

And again, this morning, the bailiff recounted to me the fact that he received a telephone call from another man about you about how you were a victim. And it's pretty clear that your relationships with these men are

unhealthy and inappropriate.

You may not continue to work at your current place of employment, ma'am, which is – it just appears to be yet another relationship where you're involved in something that is not healthy for you. That is your employment at Sew Many Parts. You may not continue that employment.

But you'll attend the Community Employment class at Goodwill and obtain verifiable employment. Any employment that you receive must be approved by your probation department.

*Id.* at 676.

**{¶ 49}** The majority opinion concludes that the trial court's decision is unreasonable because "[t]he only evidence in the record regarding this employment is contained in the employer's letter submitted with Baker's sentencing memorandum, which reveals an employer supportive of her rehabilitation needs." Majority Opinion at ¶ 31. However, this ignores the facts in the record that support the trial court's decision.

**{¶ 50}** The incident in question occurred on November 6, 2014, when Baker was 20 years old. At that time, Baker severely damaged the home of Mike Kerr, a 40 to 41-year old man that she had been dating off and on for about a year and a half, and who, by her own admission, "wined and dined her and fed her drugs. . . ." Doc. # 52, Sentencing Memorandum, p. 2. The incident occurred after Baker and Kerr broke up and Baker found out that Kerr had another girlfriend. Their breakup occurred about three weeks to a month before the incident.

**{¶ 51}** In the fall of 2014, Baker and her cousin, Stacy, worked at a show club, dancing. On the day of the crime, Baker and Stacy were both going to work that night.

Baker came over to Stacy's house to have a few drinks before work, and they shared a big bottle of wine. They left and were going to work, but decided to stop by Rob Vigh's house beforehand to have a few more drinks. Vigh was Baker's employer at Sew Many Parts (not the show club).

{¶ 52} Vigh testified at a suppression hearing held on March 25, 2015, and the trial judge had an opportunity to observe his demeanor and to assess his credibility. Vigh described his relationship with Baker as "[f]riends, employer and roommates and landlord at times." Transcript of Proceedings, Vol. I, p. 70. Vigh testified that he was with Baker on the day of the crime. He stated that he may have had a drink when Baker was there. He also said it was apparent that Baker had been drinking prior to the time he saw her. Vigh observed Baker drinking wine, and claimed that he did not know how much she drank while at his home. *Id.* at pp. 77-78.

{¶ 53} According to Baker's cousin, Stacy, who testified at trial, she and Baker consumed the following amounts of alcohol at Vigh's house: "a small bottle of wine, two bottles of champagne, and some shots." Transcript of Proceedings, Vol. II, p. 559. Stacy indicated that after the two women left Vigh's house, they intended to go to work at the show club. Instead, Baker said she wanted to stop by Kerr's house, and that is when the damage to Kerr's residence and belongings occurred.

{¶ 54} Vigh testified that later in the evening on November 6, 2014, he received a call from Baker. He described Baker as being very scared, hyperventilating, and screaming. Transcript of Proceedings, Volume I, p. 71. Vigh stated that Baker did not appear to be in possession of her faculties, and that he could barely understand her. Based on his years of having known Baker, he believed she was on drugs when she

called him. *Id.* at p. 75. He further stated that during the two and a half years that he had known Baker, he had the opportunity to see her when she was on drugs that cause impairment. *Id.* at p. 83. Based on his knowledge of how Baker behaves when she is impaired, he believed she was very impaired when she called him on November 6, 2014. *Id.* at pp. 83-84.

{¶ 55} As was noted by the majority, a letter from Vigh was attached to Baker's sentencing memorandum. While his letter could be said in some ways to be supportive of Baker's rehabilitative needs, the vast majority of the letter consists of Vigh's recitation of facts not disclosed at trial that, in Vigh's opinion, indicated Baker was not "trespassing" on Kerr's property on the night in question. Vigh also offered an extended legal analysis (even though Vigh is not an attorney), of why he counseled Baker to go to trial rather than accept a plea deal.

{¶ 56} R.C. 2929.19 governs what information courts may consider at sentencing hearings. In this regard, R.C. 2929.19(B)(1) states that that before imposing sentence, the court "*shall consider the record*, any information presented at the hearing by any person pursuant to division (A) of this section, and if one was prepared, the presentence investigation report, * * * and any victim impact statement * * *." (Emphasis added.)

{¶ 57} Trial courts are not restricted to considering facts contained in a presentence investigation report or a victim impact statement. Instead, they consider a broad range of information when imposing sentence. *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13 (2d Dist.). "Moreover, [t]he evidence the court may consider is not confined to the evidence that strictly relates to the conviction offense because the court is no longer concerned, like it was during trial, with the narrow

issue of guilt." *Id.* at ¶ 14, citing *Williams v. New York*, 337 U.S. 241, 246-247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

**{¶ 58}** Sentencing has a two-fold purpose – "to protect the public and to punish the offender. R.C. 2929.21(A). And a principle of sentencing is that sanctions should be designed with an eye to changing the offender's behavior and rehabilitating him. *See* R.C. 2929.21(A). So when deciding what conditions should accompany a community-control sanction, courts must consider how to achieve these purposes and principles in the unique circumstances of the particular case." *Bowser* at ¶ 12. In imposing sentence, courts aim for an appropriate sentence based on the crime's seriousness and the defendant's character. *State v. Dukes*, 2d Dist. Montgomery No. 26531, 2015-Ohio-4714, ¶ 19, citing *State v. Barnes*, 2d Dist. Montgomery No. 24201, 2011–Ohio–2424, ¶ 22.

**{¶ 59}** In deciding that employment at Vigh's warehouse was not appropriate, the trial court was entitled to rely on its own observations of Vigh at the suppression hearing. More importantly, the trial court was entitled to be skeptical of Vigh's influence and judgment, based on the fact that he allowed Baker, a minor, to drink in his presence and to leave his home, knowing that she was likely intoxicated. In addition, Vigh certainly did Baker no favors over the course of their two-and-a half year relationship, again during her minority, when he observed her impaired and under the influence of drugs, yet apparently did nothing to intervene. Instead, he furnished and permitted her to drink alcohol in his presence, which is a criminal offense. *See* R.C. 4301.69(A) and (B). Vigh, by his own statement, appears to have exhibited substantial influence over Baker's decision-making, and the trial court was allowed to conclude that he was not a positive influence.

{¶ 60} In view of the above circumstances, which the trial court was entitled to consider, the requirement that Baker attend the Goodwill course on employment and obtain other employment was not unreasonable. As was noted, the trial court sat through the suppression hearing and the trial, and had an opportunity that we lack to observe the demeanor of both Vigh and Baker. *See, e.g., In re J.F.F.*, 2d Dist. Miami No. 2004-CA-34, 2005-Ohio-1906, ¶ 23 (noting that "[t]he trial court was in the best position to judge whether [the defendant's] remorse was genuine, and it expressed doubt in that regard. We will not second guess its assessment on appeal.")

{¶ 61} We should defer to the trial court's observations and not engage in helicopter sentencing – in effect, hovering over the trial court, and intervening in a paternalistic fashion.

## B.   The Order Regarding Baker's Counseling

{¶ 62} At ¶ 32, the majority states that despite being aware that Baker was already seeing a counselor, the trial court "ordered Baker to change therapists by obtaining treatment at Samaritan Behavioral Health Institute." As an initial matter, I note that this incorrectly states the facts.

{¶ 63} At the sentencing hearing, the trial court told Baker she would be required to "complete all of the treatment recommended at SBHI (Samaritan Behavioral Health Institute) as well as any other treatment recommended by your probation officer." Transcript of Proceedings, Vol. III, p. 675. The court did not order Baker to change therapists. Under the court's direction, Baker was not precluded or prohibited from continuing with her current therapist if she chose to do so.

{¶ 64} Likewise, the termination entry does not order Baker to change therapists, and does not prohibit Baker from continuing to see her current therapist. *See* Doc. #53, p.1. As a result, the majority's statement (and the conclusion that follows) are inaccurate.

{¶ 65} In this regard, I would point out that trial courts, not the court of appeals, are in the best position to know what local services are appropriate to use in rehabilitating a defendant. Furthermore, the trial court was not required to accept statements of Baker's therapist, since community control decisions are in the sound discretion of the court. *See J.F.F.*, 2d Dist. Miami No. 2004-CA-34, 2005-Ohio-1906, at ¶ 20-24 (rejecting the argument that the trial court erred in failing to accord more weight to a therapist's testimony when making sentencing decisions.)

{¶ 66} I would also point out that the letter from Baker's current counselor recognized the possibility of incarceration, and recommended that a therapist be assigned in the event that Baker would be incarcerated for a significant period of time. This statement militates against concluding that any type of significant harm might exist if Baker were required to change therapists. However, as I indicated, this is not what happened. Baker was not required to "change" therapists. She was free to continue with her current counselor, and was only required to have additional treatment.

{¶ 67} Finally, the record indicates that during the presentence investigation, Baker told the probation department that she was currently attending counseling. Baker also stated that she was willing to attend drug or alcohol treatment as needed. Presentence Investigation Report ("PSI"), p. 4. In addition, Baker also specifically agreed to cooperate with a DRC assessment regarding her needs and risk of reoffending,

and "to participate in any programming or treatment DRC offers to address any issues raised in the assessment." *Id.* at p. 5. The PSI recommended a number of sanctions that the trial court subsequently adopted, including that Baker complete all treatment at Samaritan Behavioral Health Institute and comply with any further treatment recommended by that agency, the court, or the Division of Criminal Justice Services. *Id.* at p. 8.

**{¶ 68}** In view of Baker's agreement to participate in treatment ordered by the probation department and the court, Baker waived the right to challenge the court's order on appeal. At a minimum, Baker's argument on appeal is disingenuous.

**{¶ 69}** Accordingly, for the reasons stated, I very respectfully dissent from the part of the majority opinion that reverses the judgment with respect to the community control sanctions.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Sallynda Dennison
Angela Miller
Hon. Mary K. Huffman