[Cite as *State v. Baker*, 2018-Ohio-511.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                              :
                                           :
        Plaintiff-Appellee                 :     C.A. CASE NO. 27379
                                           :
v.                                         :     T.C. NO. 2014-CR-3851/1
                                           :
KELSEY BAKER                               :     (Criminal Appeal from
                                           :      Common Pleas Court)
        Defendant-Appellant                :
                                           :

. . . . . . . . . .

O P I N I O N

Rendered on the 9th day of February, 2018.

. . . . . . . . . .

ALICE PETERS, Atty. Reg. No. 93945, Montgomery Co. Prosecutor's Office, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ANGELA MILLER, Atty. Reg. No. 64902, 322 Leeward Drive, Jupiter, Florida 33477

and

SALLYNDA DENNISON, Atty. Reg. No. 68027, 88 E. Broad Street, Suite 1460, Columbus, Ohio 43215
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the December 14, 2016 Notice of Appeal of Kelsey Baker. Baker appeals from the November 16, 2016 "Amended Termination Entry – Community Control," which ordered Baker, upon a remand from this Court, to pay restitution to Michael Kerr in the amount of $2,800.00, following Baker's convictions for vandalism and burglary. We hereby affirm the judgment of the trial court.

{¶ 2} This Court previously set forth the following factual background regarding Baker's offenses:

Prior to the incident that led to her arrest, Baker was in a relationship with Michael Kerr, and had access to his residence at 154 Cliff Street in Dayton. Baker's cousin, Stacy Baker, was in a relationship with Kerr's roommate, so she also had access to the same residence. After Kerr ended the relationship, Baker contacted Kerr, asking to come by his house to give him a birthday present. Kerr responded by text, telling her that he was taking his sister shopping, and would not be home; in fact, he was out with his new girlfriend. Kerr ignored additional texts from Baker. Baker and her cousin entered the unlocked and empty house, and when Baker discovered evidence of the new girlfriend, she became very upset. Baker began throwing things, destroying dishes and other personal property. Baker picked up a golf club and started swinging at the television. Windows in the house and the garage were broken. Baker then took a gallon of blue paint from the garage and splashed paint all over the house. After she returned to her car, Baker drove the car into the garage door, causing structural damage to the garage. When Kerr returned home, he saw Baker and her

cousin exit the house, get in Baker's car, crash the vehicle into the garage, then quickly drive away, leaving behind on the garage floor the vehicle's side view mirror and a license plate. Kerr called the police. While he was waiting for the police to arrive, Baker and her cousin returned to Kerr's residence. An officer testified that Baker admitted using a bat to break the windows and claimed she had a key to the front door. The officer did not find the key on Baker's key ring.

At trial, Kerr estimated that his losses for the destruction of his personal property exceeded $10,000, but no receipts or estimates were offered in evidence. The owner of Kerr's residence, William Hawkins, estimated that the cost to repair the structural damage, garage door, windows, wall, cabinets and floors was $24,000, but no written estimates were offered in evidence. Hawkins testified that he paid $15,000 to purchase the house, which is the amount listed with the county recorder as its tax value. The presentence investigation report reflects that Kerr and Hawkins obtained estimates for the cost of repair or replacement, but no written estimates were included in the report. The report reflects that Hawkins did not have homeowner's insurance. The report does not indicate whether Kerr had renter's insurance that may have covered some of his losses.

The PSI report also reflects that Baker claimed to have a job at a warehouse, earning $11 per hour, but she did not verify her employment at that time. This employment was subsequently verified by a letter submitted

by her employer and attached to Baker's sentencing memorandum. The PSI report indicates that Baker previously worked as a dancer at a show club, and as a waitress. She was receiving health insurance through Medicaid, and $340 a month in food assistance benefits. Baker has custody of her four-year-old child. Baker is being treated by a psychologist for mental health issues that preceded the conduct that led to her convictions.

*State v. Baker*, 2016-Ohio-315, 58 N.E.3d 498, ¶ 3-5 (2d Dist.).

{¶ 3} The trial court sentenced Baker to community control sanctions, which included requirements that she pay restitution to Kerr in the amount of $10,235.00 and to Hawkins in the amount of $24,476.95.   On her direct appeal, this Court noted that the trial court relied upon the PSI report to determine restitution and found that the report "does not contain sufficient evidence from which the court could determine, with any degree of certainty, the amount of the victim's actual loss.   A hearing on restitution should be conducted to validate the verbal estimates, and to document actual losses." *Id.*, ¶ 15. This Court remanded the matter for a hearing on restitution.   *Id.*, ¶ 16.

{¶ 4} A hearing was held on June 6, 2016.   Kerr did not appear at the hearing. At the start thereof, the court indicated, "I want everyone to know I'm going to decide restitution. * * * I'm going to take it under advisement and issue a written decision."   The State presented two exhibits and no witnesses at the hearing.   State's Exhibit 1 is an estimate from Angler Construction in the amount of $24,476.95 to repair the property at 154 Cliff Street, and State's Exhibit 2 is a handwritten document from Kerr listing personal property items allegedly destroyed by Baker in the amount of $10,235.00. Counsel for Baker objected to both Exhibits, and the court indicated that it would defer ruling on the

admissibility of the exhibits until it reviewed the record.

{¶ 5} The following exchange occurred:

MR. MARSHALL:  * * * The State would then ask the Court to take what I'll call judicial notice of the testimony at trial.  That was sworn testimonial evidence, which is specifically what the Court of Appeals has called for.  So we would ask that the Court take judicial notice of that testimony that was cross-examined thoroughly on the issue of value. And then - -

THE COURT:  And I'll stop you for a second.  I'm - - while I'm not going to take judicial notice, it's in the record and it's something that I can consider, again, along with everything else.  So the - - the entire record no matter who gave the testimony I - - because it was sworn I will consider it and give it the weight that's appropriate. * * *

MS. ROTHCHILD DENNISON:  Well, the other thing that I was going to say is that it was thoroughly cross-examined.

THE COURT:  Well, I'm going to look at it.  * * * I'm going to read the transcript.  So I want everybody to be clear I'm not making any decision right now.

MS. ROTHCHILD DENNISON:  Okay.

* * *

THE COURT:  * * * I don't want you - - I don't want anybody to think I'm making a decision now.  I need to read that transcript.

{¶ 6}  At the hearing, two witnesses testified on behalf of Baker. First, Matthew

Roberts stated that he is a contractor who inspected and repaired the Cliff Street Property. He stated that when he inspected the home, in general, "it was in pretty poor repair." Secondly, Robert Vigh testified on behalf of Baker. According to Vigh, he and Baker entered into a business agreement in June of 2015, incorporating an entity named Viable Properties, LLC. Vigh testified that Viable Properties then purchased the Cliff Street property from Seth Hawkins for $13,000.00. Vigh testified that the contract also included a Satisfaction and Release agreement between Viable Properties, Hawkins, and Baker.

{¶ 7} On June 17, 2016, Baker filed a pleading captioned "Closing Argument Res[t]itution."

{¶ 8} In its Decision and Entry, the court noted that as to State's Exhibit 1, "no testimony concerning the document was provided at the hearing," and that as to State's Exhibit 2, "the document was unsigned and no testimony concerning the document was provided at the hearing." The court found that "Hawkins has compromised his right to restitution by selling the property and executing the Satisfaction and Release." Regarding restitution to Kerr, the court concluded as follows:

> Next, with respect to restitution on Kerr's personal property, Kerr testified at trial that his furniture was flipped over and stabbed; that his flat screen television was destroyed with coasters thrown through it; that a bucket of paint was poured everywhere, including on his clothes, couch, bed, carpet, kitchen, bathroom, and a manila folder with receipts for purchases that he had made; that his dishes were broken; that his bed was stabbed; that his toiletries were in the bathtub with running water; and that his dresser drawers and clothes were thrown out the window. Kerr testified

that he lost several possessions, including a television, recliner, bed, food, kitchen table, microwave, and clothes, among other things. Kerr estimated the value of his damaged property to total more than $10,000.00 including a destroyed $1,200.00 mattress and $1,600.00 television. Kerr did not offer any receipts into evidence at trial because his receipts within a folder were ruined by the blue paint splashed everywhere by Baker. Baker should not benefit from her destruction of the documents to prove the amount of restitution. William Hawkins corroborated Kerr's trial testimony, testifying that the house was "completely trashed." While Kerr did not testify at the restitution hearing or provide purchase receipts, he explained at trial that any receipts in his possession regarding his personal property within his manila folder were ruined by the blue paint splashed everywhere by Baker. Because of Baker's destroying Kerr's receipt records, Kerr cannot be expected to be able to provide those receipts in support of his restitution claim. After reviewing the totality of the record, the court finds that the record establishes that the victim in this matter, Mike Kerr, established the value of two specific items of property with reasonable certainty, a mattress and a television. As economic loss he suffered in total the amount of $2,800.00 resulting from the crimes of which Defendant Kelsey Baker was found guilty. The court finds that Kerr's economic loss herein is in the amount of $2,800.00, and, accordingly, Defendant Kelsey Baker shall be ordered to pay restitution to Mike Kerr in the amount of $2,800.00. The court further finds, based upon the record, that Defendant is employed, and

has claimed to be employed by Robert Vigh, in a variety of capacities, since at least sometime after the filing of the indictment herein. Defendant is currently 23 years of age. She has one child. Through the pre-sentence investigation, Defendant admitted that she completed her high school education through ECOT in 2011. The pre-sentence investigation also indicates that Defendant "is in good physical condition, is no(t) under medical care, and she takes no prescription medications." Based upon the entire record, the court finds that Defendant has the present and future ability to pay restitution. * * *

{¶ 9} Baker asserts four assignments of error herein. We will consider the first three assignments of error, which are addressed to the trial court's restitution order, together. They are as follows:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ENSURE THAT THE RESTITUTION AMOUNT WAS BASED ON COMPETENT CREDIBLE EVIDENCE OF THE ACTUAL AMOUNT OF HARM CAUSED. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATED CONSTITUTION.

And,

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ENTER RESTITUTION IN "OPEN COURT," AS REQUIRED BY R.C. 2929.18(A)(1).

And,

THE TRIAL COURT ERRED IN ORDERING RESTITUTION TO AN

ALLEGED VICTIM WHERE THE PERSONAL PROPERTY THAT WAS THE BASIS OF THE RESTITUTION ORDER WAS ABANDONED AND THE LANDLORD SOLD THAT PERSONAL PROPERTY WITH THE REAL ESTATE IN AN "AS IS" SALE. FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION ARTICLE I, §§ 5, 10 AND 16.

{¶ 10} R.C. 2929.18 provides in part as follows:

(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section * * * . Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts

indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

{¶ 11} " 'Economic loss' means any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *." R.C. 2929.01(L).

{¶ 12} As this Court has noted:

A trial court abuses its discretion when it orders restitution that does not bear a reasonable relationship to the actual financial loss suffered. [*State v. Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-1230] at ¶ 11. Therefore, we generally review a trial court's order of restitution under an abuse of discretion standard; an abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.; State v. Naylor,* 2d Dist. Montgomery No. 24098, 2011–Ohio–960, ¶ 22.

*State v. Wilson*, 2d Dist. Montgomery No. 26488, 2015-Ohio-3167, ¶ 11.

{¶ 13} As this Court has further noted:

"An order of restitution must be supported by competent, credible evidence in the record. *State v. Warner* (1990), 55 Ohio St.3d 31, 69, 564 N.E.2d 18. 'It is well settled that there must be a due process ascertainment

that the amount of restitution bears a reasonable relationship to the loss suffered.' *State v. Williams* (1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270. 'A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted.' *State v. Banks* (Aug. 19, 2005), Montgomery App. No. 20711, 2005-Ohio-4488. 'Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered.' *State v. Golar* (October 31, 2003), Lake App. No. 2002-L-092, 2003-Ohio-5861."

*State v. MacQuarrie*, 2d Dist. Montgomery No. 22763, 2009-Ohio-2182, ¶ 7.

{¶ 14} "The amount of restitution should, if necessary, be substantiated through documentary or testimonial evidence. *State v. Summers,* Montgomery App. No. 21465, 2006–Ohio–3199. The trial court is authorized to base the amount of restitution on an amount recommended by the victim. *State v. Pillow,* Greene App. No. 07CA095, 2008–Ohio–6046; R.C. 2929.18(A)(1)." *State v. Naylor*, 2d Dist. Montgomery No. 24098, 2011-Ohio-960, ¶ 21.

{¶ 15} We will first address Baker's second assignment of error. We initially note that Baker relies upon *State v. Riley*, 184 Ohio App.3d 211, 2009-Ohio-3227, 920 N.E.2d 388 (6th Dist.), to assert that the trial court erred in failing to enter restitution in open court. In *Riley*, Gerald Riley appealed his conviction and sentence for aggravated burglary, and the Sixth District affirmed the conviction but "reversed the sentence on both imposition of a ten-year term of imprisonment and restitution." *Id.*, ¶ 1. The matter was remanded for resentencing "and for rehearing on the issue of restitution to the victims of the aggravated robbery." *Id.* An evidentiary hearing on restitution was conducted on

February 22, 2008, along with a resentencing hearing. *Id.*, ¶ 2. "The trial court issued a judgment, journalized on February 25, 2008, sentencing appellant to incarceration for ten years and ordering appellant to pay $15,000 to the Ohio Department of Rehabilitation and Corrections as restitution." *Id.* In a subsequent February 29, 2008 judgment entry, the trial court ordered Riley to pay the victims of his crime restitution in the amount of $38,766.69. *Id.*

{¶ 16} On appeal from both judgments, in his third assignment of error, Riley asserted in part that the trial court " 'erred in imposing restitution as it failed to make its order in open court and failed to consider appellant's ability to pay.' " *Id.*, ¶ 7. The Sixth District noted that the "requirement to issue a restitution order in open court is based upon R.C. 2929.18(A)(1). The statute provides: 'If the court imposes restitution, the court shall order that the restitution be made to the victim in open court * * *.' " *Id.,* ¶ 31. The court found "appellant's assignment of error No. III well taken due to both the failure of the trial court to consider appellant's present and future ability to pay restitution before ordering it and the trial court's failure to issue its order of restitution in open court." *Id.*, ¶ 33. The Sixth District concluded as follows at ¶ 34:

> * * * The trial court's judgment ordering appellant to pay the victims of his crime the sum of $38,766.69 is reversed and remanded to the trial court for an evidentiary hearing to consider appellant's present and future ability to pay restitution. Should the trial court, after conducting the hearing on restitution on remand, order payment of restitution by appellant to the victims of the aggravated burglary, the trial court shall make the restitution order in open court.

{¶ 17} As noted above, the trial court held a hearing on the issue of restitution pursuant to this Court's remand, and Baker received the hearing to which she was entitled pursuant to R.C. 2929.18(A), since she disputed the amount of restitution imposed at her original sentencing hearing. When reading R.C. 2929.18(A)(1) in its entirety, we do not agree with Baker that the court was required to pronounce the exact amount of restitution at the restitution hearing to satisfy the "in open court" requirement. The original order requiring restitution was made in open court and a full evidentiary hearing was held on remand, providing a basis for the cogent order. While the remand was essentially a re-sentencing, Baker had notice that the court would impose restitution, and at the start of the restitution hearing, the court made clear that it intended to review the entire record prior to ordering the dollar amount of restitution, including the transcript and the PSI, and counsel for Baker did not object. For the foregoing reasons, Baker's second assignment of error is overruled.

{¶ 18} In Baker's first assignment of error, she argues that the "unsubstantiated trial testimony from Kerr was the sole basis for the restitution order." She asserts that the "court failed to take any depreciation of personal property into account." Baker asserts that the "question of whether Kerr had renter's insurance that might cover all or part of the damage remains unresolved."

{¶ 19} As the trial court noted, at trial, Kerr testified that his television and mattress were destroyed. Kerr testified that "all my furniture was flipped over, stabbed. My flat screen TV had little - - I have little coasters with my children's faces on it thrown through my TV. There was a bucket of paint poured everywhere all over my clothes, my couch, my bed, carpet, kitchen." He identified State's Exhibit 8 as a photograph of his television,

and he testified that he found the television "[j]ust like you see it, busted, paint, my children's pictures inside." Exhibit 8 depicts a large flat-screen television with holes in the screen and blue paint on the screen.

{¶ 20} The following exchange, to which Baker directs our attention, occurred on cross-examination:

Q.  How did you come to your valuation of your property?

A.  I know what I paid for my stuff I bought.  I bought it all.  I bought my TV, my couch, my bed, my tables, my coffee tables - -

* * *

Q.  I got that.  When did you buy them?

A.  After my separation with my wife - -

Q.  And - -

A.  - - probably a year and half, two years.

Q.  So everything was a year and half - -

A.  Right, it had - -

Q.   - - old or newer?

A.  Yes, ma'am.  I know there's some depreciation there.  I know that.  I know I'm not going to - - I wish it never happened, so there you go.

Q.  So you bought your TV new a year and a half before this?

A.  No, ma'am, my TV was probably four years old and I bought it for my children and, but when I moved out then I just - - you know, she said take it because - -

* * *

A. When I move out of my house, my kids wanted me to just go ahead and take it because I had already bought them another 40 inch flat screen.

Q. Okay. And so it was - -

A. So I get the hand me down.

Q. It was four years old?

A. Approximately. Yeah.

Q. And how much did you pay for it new?

A. Sixteen hundred - - maybe sixteen. Yeah.

* * *

Q. Is that the TV set?

A. Yes, ma'am.

Q. And you said that it was four years old?

A. Yes, ma'am.

Q. And so what did you say you paid for it new?

A. It's 1,600.

Q. Did you have any TV set besides that?

A. At that house?

Q. Yes.

A. No, ma'am.

Q. And so if you said it was 50 inch that you paid 825 for, would that be incorrect?

MR. GEHRES: I'm going to object, Your Honor.

A. Sustained. If you have something you're suggesting that he made that - - someplace he made that statement then show him the statement.

(Counsel confer)

MS. DENNISON: Okay. So I use - -

THE CLERK: Put yours Kelsey A.

* * *

BY MS. DENNISON:

Showing you what's been marked Kelsey A. Do you see a 40 inch TV on here for $1,600?

(Defendant's Exhibit Kelsey A marked for identification)

(Witness reviews document)

A. Yeah, I do.

Q. You do?

A. Eight twenty-five. Yeah.

Q. * * * So I asked you if you saw a 40 inch for $1,600.

A. No, there's a 50 inch for 825.

* * *

BY MS. DENNISON:

Q. You itemized broken dishes, $100. Is there something special about these dishes?

A. Yes, ma'am.

* * *

BY MS. DENNISON:

Q.   Showing - -

MR. GEHRES:   Your Honor, I'm going to object to this line of questioning.   The foundation for the documents she's using has not been laid.

THE COURT:   Sustained.

* * *

Q.   When you - - how - - where did you get your dollar figures from that were on the list that you provided?

MR. GEHRES:   Your Honor, I'm going to object again.   These questions have been asked and answered.

THE COURT:   Sustained because again, there's been no introduction of that exhibit.   Let him look at it, and he's entitled to see that if you're going to question him about it.

BY MS. DENNISON:

Q.   Showing you what's been marked Kelsey A.

* * *

BY MS. DENNISON:

Q.   Did you prepare that list?

A.   Yes.

Q.   On that list, the dollar figures that you got - -

A.   Yes.

Q.   - - how did you come to those numbers?

A. Well, because I bought all this.

Q. Okay.

A. All the receipts - -

Q. So - -

A. - - are covered with blue paint.

Q. Are you saying that those are the prices that you paid for them brand new?

A. You know, I don't - - I'm not for certain. No, I don't know.

Q. Okay.

A. But I know the couch and my bed are.

Q. I understand that you get to put a valuation on it, but how did you conclude that those were proper valuations?

MR. GEHRES: Your Honor, I'm going to object again. No - -

THE COURT: Sustained. He already indicated how he arrived at them.

BY MS. DENNISON:

Q. So is it your testimony then that that's what you paid for them new?

A. Yes, ma'am.

{¶ 21} Kerr also testified that "my bed was stabbed everywhere." Kerr identified State's Exhibit 10 as a photograph of "my $1,200 memory foam mattress," and the photo depicts a mattress with blue paint and slash marks all over it.

{¶ 22} As noted above, Kerr testified at trial that he paid $1,600.00 for his flat

screen television and $1,200.00 for his mattress, and that Baker destroyed his receipts for the items. Clearly, the destruction of the items is a direct and proximate result of Baker's vandalism. Kelsey Exhibit A, which counsel for Baker produced in an attempt to impeach Kerr regarding the value of the television and other items, was not admitted into evidence at trial. As noted above, the trial court is authorized to base the amount of restitution on an amount recommended by the victim. "The reliability of the evidence and the credibility of the witnesses is for the trial court, as trier of fact, to determine." *State v. Isaacs,* 2d Dist. Montgomery No. 27414, 2017-Ohio-7637, ¶ 10. The trial court clearly found Kerr's trial testimony to be credible regarding what he paid for his television and mattress, and we defer to the trial court's assessment of credibility. There is nothing in the record to suggest that Kerr had renter's insurance and received proceeds therefrom. We conclude that an abuse of discretion is not demonstrated. Accordingly, Baker's first assignment of error is overruled.

{¶ 23} Regarding Baker's third assignment of error, she asserts that "the trial court erred in ordering restitution to Kerr for personal property that he abandoned." We agree with the State that this argument lacks merit. Baker was convicted of vandalism, in violation of R.C. 2909.05(A), which provides: "No person shall knowingly cause serious physical harm to an occupied structure or any of its contents." " 'Serious physical harm' means physical harm to property that results in loss to the value of the property of one thousand dollars or more." R.C. 2909.05(F)(2). The photographs of Kerr's mattress and television depict the destruction of the items. Whether or not the items remained in Kerr's possession after their destruction has no relation or relevance to Kerr's right to restitution. Baker's third assignment of error is overruled.

{¶ 24} Baker's fourth assignment of error is as follows:

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE RECORD LACKS SUFFICIENT EVIDENCE TO SUPPORT THE CHARGE OF VANDALISM IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 5, 10, AND 16 OF THE OHIO CONSTITUTION.

{¶ 25} Baker asserts that "new facts," namely the deplorable condition of the home as testified to by Roberts at the restitution hearing, preclude a finding of serious physical harm.

{¶ 26} In her direct appeal, Baker argued that there was insufficient evidence to support her vandalism conviction, and this Court rejected that argument and affirmed her conviction for that offense. *Baker*, ¶ 20. " '[T]he doctrine [of res judicata] serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard.' " *State v. Perkins*, 2d Dist. Montgomery Nos. 26788, 26797, 26804, 2016-Ohio-4581, ¶ 8, quoting *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 18. We do not agree with Baker that the "new facts" developed at her restitution hearing preclude a finding of loss to property of one thousand dollars or more. Baker's fourth assignment of error is barred by the doctrine of res judicata, and it is accordingly overruled.

Having overruled all of Baker's assignments of error, the judgment of the trial court is

affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies mailed to:

Alice Peters
Angela Miller
Sallynda Dennison
Hon. Mary K. Huffman