[Cite as *State v. Floyd*, 2020-Ohio-4655.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

      Plaintiff-Appellee,                       :               No. 19AP-449
                                                                              (C.P.C. No. 18CR-2437)
v.                                                 :

                                                                         (REGULAR CALENDAR)
Zukee K. Floyd,                                    :

      Defendant-Appellant.                      :

---

D E C I S I O N

Rendered on September 29, 2020

---

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee.

**On brief**: *Timothy Young*, Ohio Public Defender, and *Natalie Presler*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, Zukee K. Floyd, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of improperly discharging a firearm at or into a habitation and one count of tampering with evidence, both with firearm specifications. For the reasons which follow, we affirm.

{¶ 2} By indictment filed May 18, 2018, plaintiff-appellee, State of Ohio, charged appellant with one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree; two counts of improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161, felonies of the second degree; one count of discharging a firearm on or near prohibited premises, in violation of R.C. 2923.162, a felony of the second degree; and one count of tampering with evidence, in violation of R.C. 2921.12, a felony of the third

degree. Each count carried a firearm specification. The charges against appellant arose from a shooting incident which occurred on May 8, 2018.

{¶ 3}     On June 3, 2019, a four-day jury trial commenced. The state dismissed one count of improperly discharging a firearm at or into a habitation prior to the start of trial.

{¶ 4}     The evidence demonstrated that during the day on May 8, 2018, appellant was asleep in the basement of K.E.'s home located on Dakota Avenue in Columbus, Ohio. Appellant and K.E. have three children in common, 15-year-old K.F., 14-year-old Z.F., and 11-year-old N.E. T.E. and her three sons, 19-year-old Al.E., 17-year-old D.E., and 14-year-old A.E., lived across the street.

{¶ 5}     K.E. explained that on May 8, 2018 her sons, K.F. and Z.F. came in the house "and said that kids were messing with them down the street." (Tr. Vol. III at 617.) K.E. then heard a knock on her door, but when she opened the door there "was nobody at the door, but the kids were in the street." (Tr. Vol. III at 618-19.) When the knocking incident happened again, K.E. went down to the basement and "told [appellant] to go handle it." (Tr. Vol. III at 620.)

{¶ 6}     Appellant walked out of his house accompanied by K.F. and Z.F. Approximately 12 to 15 kids, ranging in ages from 10 to 17 years old, had gathered in the street in front of appellant's house.  Appellant informed the group that, if anyone wanted to fight his sons, "y'all can fight * * *. I'll let y'all fight." (Tr. Vol. IV at 669.)  Appellant proposed that he would act as a referee while each of his sons had "a little one-minute fair round" with one of the other kids. (Tr. Vol. IV at 669.)

{¶ 7}     Z.F. fought first, and his fight ended without incident. During K.F.'s fight, however, all of the "kids start[ed] jumping [K.F.] and [appellant]." (Tr. Vol. III at 536.) Soon the whole "group of kids or people [were] punching and kicking people." (Tr. Vol. III at 536.) Appellant stated that during the melee D.E. took "a sucker punch swing at [K.F.] from the blindside" and Al.E. "football tackled" appellant. (Tr. Vol. IV at 672.) The brawl stopped when police arrived and the crowd dispersed.

{¶ 8}     After the fight, appellant retrieved his gun and stood outside his house for a while with his "gun to [his] side" before taking the gun "back in the house." (Tr. Vol. IV at 676.) D.E. saw appellant standing outside holding a gun, and returned home to call his mother's boyfriend, D.G.

{¶ 9}  D.G. arrived a few minutes later and walked over to appellant's house. D.G. had his concealed carry license, and had a firearm concealed under his shirt that day. D.G. and appellant exchanged words and then began shoving each other. Appellant then retrieved his gun from the house and came back outside. Although the testimony differed regarding who fired the first shot, appellant and D.G. eventually started shooting at each other. K.F. "got shot" in his leg and another shot grazed appellant's chest. (Tr. Vol. III at 547.)

{¶ 10} When appellant's gun jammed, D.G. ran back toward his girlfriend's house. Appellant pursued D.G. across the street and took "two shots at [D.G.], striking [D.G.] in his elbow." (Tr. Vol. IV at 709.) Appellant claimed that a "kid [came] out the door [of T.E.'s house] with a pistol, and he point[ed] it at [appellant]." (Tr. Vol. IV at 683.) In response, appellant started "shoot[ing] towards their house."  (Tr. Vol. IV at 683-84.) Two individuals were present inside when appellant fired into the house. Appellant finally returned to his house and "took the gun and put it up under [his] back porch." (Tr. Vol. IV at 685.)

{¶ 11} The jury returned verdicts finding appellant not guilty of felonious assault and discharge of a firearm on or near a prohibited premises, but guilty of improperly discharging a firearm at or into a habitation and tampering with evidence along with the accompanying firearm specifications. On June 10, 2019, the trial court held a sentencing hearing. T.E. informed the court at the sentencing hearing that she had incurred $4,020 in expenses as a result of appellant's criminal conduct. The court sentenced appellant to a total prison term of six years and ordered appellant to pay restitution in the amount of $4,020.

{¶ 12} Appellant appeals, assigning the following three assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN ORDERING RESTITUTION ABSENT COMPETENT AND CREDIBLE EVIDENCE OF THE AMOUNT TO A REASONABLE DEGREE OF CERTAINTY.
>
> [II. THE TRIAL COURT ERRED IN AWARDING RESTITUTION WITHOUT CONSIDERING THE DEFENDANT'S ABILITY TO PAY.
>
> [III.] TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO OBJECT TO THE RESTITUTION AMOUNT AND REQUEST A HEARING, AND FOR FAILING TO OBJECT TO

THE COURT'S FAILURE TO CONSIDER THE DEFENDANT'S ABILITY TO PAY.

{¶ 13} Appellant's first assignment of error asserts the trial court erred by ordering an amount of restitution which was not supported by competent and credible evidence. Generally, " '[o]n review of a trial court's imposition of restitution as part of a felony sentence, we apply the standard set forth in R.C. 2953.08(G)(2)(b), inquiring whether the imposition of restitution is clearly and convincingly contrary to law.' " *State v. Anderson*, 10th Dist. No. 18AP-103, 2018-Ohio-4618, ¶ 10, quoting *State v. Allen*, 10th Dist. No. 17AP-296, 2018-Ohio-1529, ¶ 11. *Accord State v. Becraft*, 2d Dist. No. 2016-CA-9, 2017-Ohio-1464, ¶ 17-18, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 7. However, as appellant did not object to the amount of restitution ordered by the trial court, appellant has forfeited all but plain error review. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 21-22; *State v. Thompson*, 10th Dist. No. 10AP-1004, 2011-Ohio-5169, ¶ 24, 38; *State v. Policaro*, 10th Dist. No. 06AP-913, 2007-Ohio-1469, ¶ 6.

{¶ 14} An appellate court has discretion to recognize "[p]lain errors or defects affecting substantial rights * * * although they were not brought to the attention of the court." Crim.R. 52(B). To demonstrate plain error, the defendant must show: (1) an error that is plain on the record, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings, and (2) that such error affected substantial rights, i.e., there was a reasonable probability that the error affected the outcome of the trial. *State v. J.M.*, 10th Dist. No. 14AP-621, 2015-Ohio-5574, ¶ 27, citing *Rogers* at ¶ 22; *State v. Barnes*, 94 Ohio St.3d 21, 27 (2000). An appellate court takes "[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 15} A sentencing court has discretion to order restitution for the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, ¶ 3; R.C. 2929.18(A)(1). The court may base the amount of restitution "on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1). A trial court is

required to conduct a hearing on restitution "if the offender, victim, or survivor disputes the amount of restitution ordered." *Lalain* at paragraph two of the syllabus.

{¶ 16} "An award of restitution is limited to the actual loss caused by the defendant's criminal conduct for which he [or she] was convicted, and there must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 66, citing *State v. Blay*, 10th Dist. No. 10AP-247, 2010-Ohio-4749, ¶ 7. *Accord State v. Hooks*, 135 Ohio App.3d 746, 749 (10th Dist.2000); *State v. Johnson*, 4th Dist. No. 03CA11, 2004-Ohio-2236, ¶ 10. "While the 'trial court is under no duty to itemize or otherwise explain how it arrived at the amount of restitution it orders,' the court must 'discern the amount of restitution to a reasonable degree of certainty from competent, credible evidence in the record.' " *State v. Simmons*, 10th Dist. No. 15AP-708, 2017-Ohio-1348, ¶ 46, quoting *State v. Perkins*, 3d Dist. No. 9-13-52, 2014-Ohio-2242, ¶ 23. "A trial court commits plain error in awarding restitution that is not supported by competent, credible evidence." *Grove City v. Sample*, 10th Dist. No. 18AP-30 (Nov. 15, 2018). *Accord State v. Legrant*, 2d Dist. No. 2013-CA-44, 2014-Ohio-5803, ¶ 10; *State v. Norton*, 8th Dist. No. 102017, 2015-Ohio-2516, ¶ 44.

{¶ 17} At the sentencing hearing, T.E. told the court that from what she "accumulated in damages, the [$]1,200 is for the shooting of the house. The housing unit [was] charging [her] that." T.E. stated that she was a "low-income recipient" and that "due to this shooting, [she was] asked to leave" her home "within three days." When T.E. did find another "home, which was three months later, [she] had to pay to move in, the first month's rent, the last month's rent. [She] had to pay for storage trucks and people to help [her] move. From what [she] accumulated from all of that [was], like, $4,020." (Sentencing Tr. at 8.)

{¶ 18} Appellant contends the lower court erred in basing the amount of restitution on T.E.'s statements,[1] as T.E. did not present documentary evidence to support the $4,020

---

[1] Although appellant notes in his brief that T.E. was not sworn in at the sentencing hearing, appellant did not object to T.E.'s unsworn statements at that time. As such, appellant waived any objection concerning the admissibility of T.E.'s unsworn statements. *See Stores Realty Co. v. Cleveland, Bd. of Bldg. Stds. & Bldg. Appeals*, 41 Ohio St.2d 41, 43 (1975) (holding that "a party may not, upon appeal, raise a claim that the oath of a witness was omitted or defective, unless objection thereto was raised at trial" because if "no objection was raised, the error is considered to be waived"); *Neague v. Worthington City School Dist.*, 122 Ohio App.3d 433, 441 (10th Dist.1997); *State v. Rodgers*, 8th Dist. No. 98779, 2013-Ohio-588, ¶ 17.

figure. However, the evidence which supports a court's restitution order "can take the form of either documentary evidence or testimony." *State v. Jones*, 10th Dist. No. 14AP-80, 2014-Ohio-3740, ¶ 23, citing *State v. DeJoy*, 10th Dist. No. 10AP-919, 2011-Ohio-2745, ¶ 33. Thus, "a restitution order may be supported by the victim's testimony alone without documentary corroboration." *State v. Jones*, 10th Dist. No. 15AP-45, 2015-Ohio-3983, ¶ 16, citing *Policaro* at ¶ 8. *Accord State v. McClain*, 5th Dist. No. 2010 CA 00039, 2010-Ohio-6413, ¶ 37 (observing that "R.C. 2929.18(A)(1) allows the trial court to rely upon the amount of restitution recommended by the victim, and does not require written documentation"); *State v. Graham*, 2d Dist. No. 25934, 2014-Ohio-4250, ¶ 57 (stating the "testimony of a victim, if determined to be credible, is sufficient to support a restitution order; no documentation is required to substantiate the victim's testimony"); *State v. Sexton*, 1st Dist. No. C-110037, 2011-Ohio-5246, ¶ 5.

{¶ 19} Appellant asserts that T.E.'s statement regarding the $1,200 charge from the housing unit lacked certainty because there was no evidence addressing whether T.E. "held insurance on the house that might have reimbursed or paid part of those expenses." (Appellant's Brief at 16.) Appellant notes that if insurance reimbursed T.E. for any portion of the $1,200 payment, the reimbursed amount could not be included in restitution. *See State v. Wiley*, 10th Dist. No. 16AP-686, 2017-Ohio-2744, ¶ 10, quoting *State v. Crum*, 5th Dist. No. 12 CAA 08 0056, 2013-Ohio-903, ¶ 12 (observing that " '[i]f a victim is reimbursed by a third-party, the victim has not suffered an economic loss' " compensable through restitution); *State v. Martin*, 140 Ohio App.3d 326, 337 (4th Dist.2000).

{¶ 20} However, there is nothing in the record indicating that T.E. received funds from a third-party to reimburse her for the $1,200 payment. Rather, T.E. stated that the housing unit charged her $1,200 for damages from the shooting. The trial court was entitled to base its restitution order on an amount recommended by T.E. *See State v. Baker*, 2d Dist. No. 27379, 2018-Ohio-511, ¶ 22 (concluding that, as "the trial court [was] authorized to base the amount of restitution on an amount recommended by the victim," and "[t]here [was] nothing in the record to suggest that [the victim] had renter's insurance and received proceeds therefrom," the court could rely on the victim's testimony detailing the value of his damaged property).

{¶ 21} "Determinations of credibility and the weight to be given to the evidence are for the trier of fact." *Jones*, 2015-Ohio-3983, at ¶ 16, citing *State v. DeHass*, 10 Ohio St.2d

230 (1967), paragraph one of the syllabus. The trial court found T.E.'s statement regarding the $1,200 charge to be credible, and we defer to the trial court's assessment of T.E.'s credibility. *See In re Hatfield*, 4th Dist. No. 03CA14, 2003-Ohio-5404, ¶ 10 (observing that the trial court "obviously found" the victim's testimony at the restitution hearing "credible, and [the appellate court would not] second-guess [the trial court's] credibility determination").

{¶ 22} Appellant also contends the trial court erred by relying on T.E.'s statement that she had to pay the first and last month's rent to move into a new house following the shooting. T.E. stated that first month's rent was $1,075 and last month's rent was $1,075. The court asked T.E. how much she was paying in rent at the house on Dakota Avenue, and T.E. responded "[n]othing. I was paying no rent because I'm on low-income housing, Section 8 housing." (Sentencing Tr. at 9-10.) The court inquired if T.E. had to pay the total amount of the fee to move into the new residence, and T.E. responded "[y]es, I had to pay all of that to move into the home." (Sentencing Tr. at 10.)

{¶ 23} Appellant argues it was "objectively incredible" for T.E. to have paid nothing in rent at Dakota Avenue and to then pay $2,150 to move into a new residence. (Appellant's Brief at 19.) However, the trial court heard and considered T.E.'s statements regarding her rent at Dakota Avenue and the fee she had to pay to move into her new residence. There is nothing in the record indicating that T.E. received reimbursement for the first and last month's rent payment at the new residence. Accordingly, the trial court found T.E.'s statement regarding the $2,150 move-in fee to be credible, and we defer to the trial court's assessment of T.E.'s credibility.

{¶ 24} Appellant lastly asserts the restitution order should not have included funds for T.E.'s moving expenses because T.E. did not provide a specific dollar figure attributable to her moving expenses. T.E.'s statements demonstrate that out of the total amount of $4,020, $1,200 was attributable to the housing unit charge, $2,150 was attributable to the move-in fee, and the remainder was attributable to expenses for storage, trucks, and movers. Thus, T.E.'s statements indicate she incurred $670 in moving expenses following the shooting. The trial court found T.E.'s statements regarding her moving expenses to be credible, and appellant presents no reason for us to second-guess the trial court's credibility determination.

{¶ 25} T.E.'s statements at the sentencing hearing provided the trial court with competent and credible evidence on which to base the $4,020 restitution amount to a reasonable degree of certainty. As such, appellant fails to demonstrate plain error in the amount of restitution ordered by the trial court. Appellant's first assignment of error is overruled.

{¶ 26} Appellant's second assignment of error asserts the trial court erred in awarding restitution without considering appellant's ability to pay. R.C. 2929.19(B)(5) provides that, before imposing restitution, the trial court "shall consider the offender's present and future ability to pay the amount of [restitution]." As appellant did not object to the trial court's restitution order on grounds that the court failed to consider his ability to pay, appellant has forfeited all but plain error review. *Thompson* at ¶ 38, citing *State v. Edwards*, 10th Dist. No. 10AP-681, 2011-Ohio-3157, ¶ 27.

{¶ 27} "When determining an offender's present and future ability to pay, there are no express factors which must be considered, or specific findings which must be made." *State v. Hayes*, 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 14, citing *State v. Conway*, 10th Dist. No. 03AP-1120, 2004-Ohio-5067, ¶ 7. Indeed, "[a] trial court need not even hold a hearing to determine the offender's ability to pay." *Id.*, citing *Conway* at ¶ 7. "However, there must be some evidence in the record that the trial court considered defendant's present and future ability to pay the sanction." *Id.*, citing *Conway* at ¶ 7. *See State v. Andrews*, 1st Dist. No. C-110735, 2012-Ohio-4664, ¶ 32 (finding plain error as there was "no evidence that the court considered [defendant's] present or future ability to pay" before imposing restitution). The fact that a defendant is indigent "does not prohibit the imposition of financial sanctions, including restitution." *Conway* at ¶ 6.

{¶ 28} The trial court's judgment entry imposing sentence states that the court "considered Defendant's present and future ability to pay a fine and a financial sanction." (Jgmt. Entry at 2.) A sentencing entry which "indicates that the trial court did consider [the defendant's] present and future ability to pay the restitution imposed * * * is sufficient, particularly under a plain error standard," to satisfy R.C. 2929.19(B)(5). *State v. White*, 10th Dist. No. 10AP-34, 2011-Ohio-2364, ¶ 78. *Accord State v. Anderson*, 172 Ohio App.3d 603, 2007-Ohio-3849, ¶ 24 (11th Dist.) (holding that the requirements of R.C. 2929.19(B)(5) "are met when the trial court indicates in its judgment entry that it has

considered the offender's present and future ability to pay"); *State v. Collins*, 12th Dist. No. CA2014-11-135, 2015-Ohio-3710, ¶ 44.

{¶ 29} Appellant asserts that in *Wiley*, at ¶ 20, this court concluded a trial court's judgment entry statement indicating the court had considered ability to pay may be insufficient to satisfy R.C. 2929.19(B)(5). In *Wiley*, the trial court's judgment entry stated the court considered ability to pay, but the appellate court noted that the trial court "made no express consideration of the issue or finding on the record to this end" and that "some genuine consideration of ability to pay must occur." *Id.* However, the cited language from *Wiley* is dicta, as the appellate court found the assignment of error regarding ability to pay restitution moot based on its resolution of another assignment of error. *Wiley* at ¶ 21. *Accord Anderson*, 2018-Ohio-4618, at ¶ 16-17 (finding the same language from *Wiley* to be dicta).

{¶ 30} Moreover, the record in the present case thoroughly supports the trial court's judgment entry statement that it considered appellant's ability to pay. Appellate courts routinely look to "the totality of the record" to determine if the trial court satisfied its R.C. 2929.19(B)(5) obligation. *State v. Bey,* 6th Dist. No. L-17-1288, 2019-Ohio-423, ¶ 43, citing *State v. Phillips*, 6th Dist. No. F-05-032, 2006-Ohio-4135, ¶ 11. *Accord State v. Chaffin*, 12th Dist. No. CA2016-08-026, 2017-Ohio-4041, ¶ 9, citing *State v. Rabe*, 12th Dist. No. CA2013-09-068, 2014-Ohio-2008, ¶ 74 (stating that "[t]his court looks to the totality of the record to see if [the R.C. 2929.19(B)(5)] requirement has been satisfied"); *State v. Moody*, 5th Dist. No. 09 CA 90, 2010-Ohio-3272, ¶ 51 (holding that the appellate court may "look to the totality of the record to see if [the R.C. 2929.19(B)(5)] requirement has been satisfied"); *State v. Anderson*, 4th Dist. No. 15CA3696, 2016-Ohio-7252, ¶ 37; *State v. Newton*, 8th Dist. No. 107195, 2019-Ohio-3566, ¶ 49.

{¶ 31} Appellant explained at trial that he was asleep during the day on May 8, 2018 because he "work[ed] third shift" in a warehouse where he "drove a forklift." Appellant stated he also had a second job "cut[ting] grass for Little Grass Lawn Care Service in the mornings" after his third-shift job. (Tr. Vol. IV at 666.) The court noted at the sentencing hearing that it "had the benefit of hearing all the evidence" presented during the trial. (Sentencing Tr. at 3.) Thus, the trial court heard appellant's testimony regarding his employment at the time of the incident.

{¶ 32} The court also noted at the sentencing hearing that appellant was "41 [years old] and [had] no [criminal] record" which was "a plus for [appellant]." (Sentencing Tr. at 14.) There was no evidence indicating appellant suffered from a physical or mental condition which would prevent him from obtaining employment in the future, and appellant's six-year prison term was not so long as to preclude him from seeking employment following his release from prison. Such evidence indicates the court considered appellant's ability to pay restitution. *See State v. Newman*, 4th Dist. No. 14CA3658, 2015-Ohio-4283, ¶ 50 (reviewing the entire record to conclude the trial court had "considered [defendant's] present and future ability to pay," as the defendant testified at trial, the defendant was "forty-one years old at the time of the sentencing hearing," had "prior employment," and the four-year sentence was "not so long as to preclude [defendant] from seeking employment following his release from prison"); *Thompson* at ¶ 40 (concluding the trial court considered the defendant's ability to pay restitution as the "PSI and the trial testimony indicated that Thompson was employed subsequent" to his theft offense, and there was "no evidence of any physical or mental condition that would preclude him from working after his release from prison"); *State v. Brewer*, 4th Dist. No. 14CA1, 2014-Ohio-1903, ¶ 46 (concluding the trial court had considered the defendant's present and future ability to pay restitution as the "record included Brewer's statements that he was 28, suffered from no major physical or mental problems, and was an experienced carpenter and forklift operator").

{¶ 33} Appellant, however, asserts the trial court considered his family's ability to pay restitution rather than his personal ability to pay. The court informed appellant at the sentencing hearing that he would become eligible for judicial release after he had served three and one-half years of his prison sentence. The court indicated it would be inclined to grant appellant judicial release from prison at the appropriate time if he made "some form of payment of restitution." (Sentencing Tr. at 20.) The court notified appellant to tell his "family to start paying $100 a month, start paying whatever you can. That way * * * by the time three years rolls around, most of this will be paid off. Then that gives [the court] a bigger incentive to let you out early." (Sentencing Tr. at 20-21.) The court asked appellant if his family could make payments toward his restitution, and appellant told the court it would be "kind of hard" for his family to do so. (Sentencing Tr. at 21.)

{¶ 34} Although the court's inquiry into appellant's family's ability to make payments toward restitution was unusual, the record demonstrates the court ultimately considered appellant's individual ability to pay the financial sanction. The court's inquiry into appellant's family's ability to pay occurred solely in the context of the court's discussion regarding judicial release. "Ohio's judicial-release statute, allows certain offenders to apply for early release from prison," but "judicial release is a privilege, not an entitlement." *State v. Ware*, 141 Ohio St.3d 160, 2014-Ohio-5201, ¶ 1, 12. Thus, an incarcerated individual has "no right to judicial release; it is an act of grace by the court." *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, ¶ 29. Accordingly, appellant has no right to be released from prison prior to the expiration of his six-year sentence, and appellant's family is under no obligation to make payments toward appellant's restitution.

{¶ 35} Furthermore, at the sentencing hearing, the court stated it would "defer" restitution so appellant could "have a commissary account" while in prison. (Sentencing Tr. at 21.) The court's sentencing entry reflects that "restitution is deferred while the Defendant is incarcerated." (Jgmt. Entry at 2.) Thus, while the court indicated that appellant would need to make some payments toward restitution to receive judicial release from prison, the court did not require appellant to make any restitution payments while incarcerated. The court's decision to defer restitution while appellant served his prison sentence demonstrates the court considered appellant's present ability to pay restitution. *See State v. Parker*, 2d Dist. No. 03CA0017, 2004-Ohio-1313, ¶ 45 (observing that "[b]y deferring payment of the fines until two months after Defendant [was] released from prison" the trial court "did consider Defendant's present and future ability to pay those fines and costs"); *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, ¶ 59 (2d Dist.); *State v. Noble*, 4th Dist. No. 15CA20, 2017-Ohio-1440, ¶ 58-59.

{¶ 36} In the present case, the trial court's judgment entry stating the court had considered appellant's ability to pay, appellant's testimony that he was working two jobs at the time of the incident, appellant's age at the sentencing hearing, the length of appellant's prison term, the absence of any evidence indicating appellant suffered from a physical or mental condition which would preclude employment, and the court's decision to defer restitution while appellant was incarcerated demonstrate the trial court considered appellant's present and future ability to pay before imposing restitution. As the trial court

complied with its R.C. 2929.19(B)(5) obligation, appellant fails to demonstrate plain error. Appellant's second assignment of error is overruled.

{¶ 37} Appellant's third assignment of error asserts his trial counsel rendered constitutionally ineffective assistance by failing to object to the amount of restitution and failing to object to the court's consideration of appellant's ability to pay. A defendant alleging ineffective assistance of counsel must demonstrate that: (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) defense counsel's errors prejudiced defendant, depriving him or her of a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. The failure to make either showing defeats a claim of ineffective assistance of counsel. *Bradley* at 143, citing *Strickland* at 697.

{¶ 38} "Judicial scrutiny of counsel's performance must be highly deferential [and a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. "Decisions on trial strategy and tactics are generally afforded a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 86. " 'To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' " *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 42, quoting *Bradley* at paragraph three of syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 82, citing *Strickland* at 694.

{¶ 39} Appellant fails to overcome the presumption that defense counsel's conduct fell within the range of reasonable professional assistance. Following T.E.'s statements at the sentencing hearing, the trial court informed defense counsel that, if counsel wanted to object to "the restitution, I'm just telling you, I'm probably going to give it to her." (Sentencing Tr. at 13.) Defense counsel then stated that "[p]er [the court's] suggestion, we would defer on restitution," and asked the court to "give [appellant] the minimum concurrent [sentence], let him come out and pay restitution." (Sentencing Tr. at 13, 16.) Thus, defense counsel sought to use appellant's need to pay restitution to encourage the

court to impose the minimum prison sentence possible. *See State v. Betliskey*, 8th Dist. No. 101330, 2015-Ohio-1821, ¶ 52-53 (finding that defense counsel's decision not to object "to the trial court's imposition of the restitution order, fines, and court costs" constituted "matters of trial strategy").

{¶ 40} Moreover, appellant fails to establish a reasonable probability that the trial court's restitution order would have differed if defense counsel had objected to restitution. Appellant relies on the same arguments he made under his first and second assignments of error, which we reviewed for plain error, as the grounds to support his ineffective assistance of counsel claim. As appellant failed to demonstrate plain error in either his first or second assignments of error, appellant likewise fails to satisfy the second prong of the *Strickland* test. *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51 (observing that " '[w]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel' "); *State v. Young*, 10th Dist. No. 18AP-630, 2020-Ohio-462, ¶ 104 (observing that as the defendant "did not demonstrate plain error" in his first assignment of error, the "same arguments [defendant] made under his first assignment of error * * * likewise fail[ed] to satisfy the second prong of the *Strickland* test"). Appellant's third assignment of error is overruled.

{¶ 41} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____